Nicolette Anne BUTLER,
Plaintiff–Appellee,

v.

ENCYCLOPEDIA BRITTANICA, INC., a New York Corporation, and Equitable Life Assurance Society of the United States, Defendants–Appellees,

and

Anthony J. Cotini, Defendant–Appellant.

Nicolette Anne BUTLER,
Plaintiff–Appellee,

v.

ENCYCLOPEDIA BRITTANICA, INC., a New York Corporation, Defendant–Appellant.

Nos. 94–1271, 94–1418.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 8, 1994.

Decided Nov. 23, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 20, 1994.*

* Judge Easterbrook did not participate in the consideration or decision of this case.

John J. Casey, Chicago, IL (argued), for Nicolette Anne Butler.

Marcia E. Goodman (argued), Joan E. Brophy, Joyce L. Meyer, Mayer, Brown & Platt, Chicago, IL, for Encyclopaedia Brittanica, Inc.

Shelley R. Smith, Ronald N. Lorenzini, Jr., Kemp, Grzelakowski & Lorenzini, Oak Brook, IL, for Equitable Life Assur. Soc. of U.S.

George N. Vurdelja, Jr. (argued), Griswold L. Ware, Vurdelja & Associates, Chicago, IL, for Anthony J. Cotini.

Before COFFEY and ROVNER, Circuit Judges, and FOREMAN, District Judge.[**]

FOREMAN, District Judge.

This action was brought under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, to determine the proper distribution of pension and savings plan benefits accumulated by an employee of the Encyclopedia Brittanica company who is now deceased. The district court's decision awarding all of these benefits to the decedent's daughter is affirmed in part and reversed in part.

## I. FACTS

Celia Cotini was an employee of Encyclopedia Brittanica and a participant in the company's Pension Plan and Savings Plan, both of which are governed by ERISA. Prior to her death, she had filed beneficiary designation forms that purported to designate her daughter, Nicolette Butler, as the beneficiary under both plans. Part of each form contained a "Spouse's Waiver of Primary Beneficiary Designation" which stated that Celia Cotini's spouse, Anthony Cotini, consented to the designation of a different primary beneficiary.[1]

---

[**] Hon. James L. Foreman, of the Southern District of Illinois, is sitting by designation.

[1]. The beneficiary designation form for the Savings Plan provides, in pertinent part:

**Savings Plan Beneficiary Designation Form**

. . . . .

○ Complete Section 2 to designate your beneficiaries under the Encyclopaedia Brittanica Savings Plan

. . . . .

**Section 2—Savings Plan Beneficiary Designations**
You can name anyone you want as your primary and contingent Savings Plan beneficiaries. However, if you are married and designate a primary Savings Plan beneficiary other than your spouse, your spouse must provide his/her written consent by completing Section 3 below. Your spouse must sign and date this form in the space provided and your spouse's signature must be witnessed by a notary public.

**Primary Savings Plan Beneficiary:** I designate the following person as my primary beneficiary to receive—in the event of my death—any amounts payable to my beneficiary under the terms and provisions of the Encyclopaedia Brittanica Savings Plan.

. . . . .

**Section 3—Spouse's Waiver of Primary Beneficiary Designation**
I ___, spouse of ___, hereby consent to the primary beneficiary designation made in Sec-

For purposes of the summary judgment motions submitted to the district court, Anthony Cotini admitted that his signature on the forms was authentic. However, he argues that the forms are invalid because his signature was not witnessed by a plan representative or a notary public as required by ERISA. A notary public's signature appears on the documents, but Cotini contends that he was never physically present before the notary and, therefore, the notary did not actually witness him signing the documents. He further asserted that he did not read the forms carefully when he signed them.

The notary, Louise Joslyn, stated that she does not know Anthony Cotini and had no recollection as to whether he had personally appeared before her to sign the documents. Joslyn stated that her general practice is to see the person actually sign a document before she will notarize it. However, she stated that she sometimes notarized documents without the signing party being present, particularly when an employee asked her to notarize a document that the employee claimed was signed by the employee's spouse.

After Celia Cotini's death, Encyclopedia Brittanica paid the Savings Plan benefits to Nicolette Butler based upon the beneficiary designation form for that plan. However,

the company determined that Butler was not entitled to benefits under the Pension Plan. The company stated that because Celia Cotini had died before she retired, the Pension Plan provided a "preretirement spouse's death benefit" rather than a retirement benefit. Under the terms of the plan, Encyclopedia Brittanica determined that only Anthony Cotini, as the surviving spouse, was eligible for the spouse's death benefit.

Butler filed a complaint seeking a declaratory judgment of her rights under the pension and savings plans and an injunction to prevent Encyclopedia Brittanica from paying any of the benefits under either plan to Anthony Cotini. Cotini filed a counterclaim against Butler and a cross-claim against Encyclopedia Brittanica for the Savings Plan benefits.

On cross-motions for summary judgment, the district court held in favor of Butler under both plans. *Butler v. Encyclopaedia Brittanica, Inc.*, 843 F.Supp. 387 (N.D.Ill. 1994). Brittanica and Cotini have appealed the district court's decision with respect to the Pension Plan. Cotini also appeals the adverse ruling on the Savings Plan.[2]

## II. ANALYSIS

A district court's review of a denial of benefits under an ERISA plan is *de novo*

tion 2 by my spouse, a participant in the Encyclopaedia Brittanica Savings Plan. The designation provides that any amounts payable to my spouse under the terms and provisions of the Encyclopaedia Brittanica Savings Plan will be paid—in the event of my spouse's death—to the designated primary beneficiary. I understand that the effect of this designation is to cause my spouse's account balance to be paid to someone other than myself, that this beneficiary designation is not valid unless I consent to it and that my consent is irrevocable unless my spouse revokes this beneficiary designation.

_____
Spouse's Signature

_____
Date
On this _ day of __, 19__, before me personally came _____ to me known to be the individual described above and who executed the same as his/her free and voluntary act for the uses and purposes stated herein.

_____
Notary Public's Signature

_____
Date Commission Expires

The beneficiary designation form for the Pension Plan is virtually identical in all relevant aspects, except that the instructions for completing Section 2 state:
○ If you are married to an eligible spouse (as defined by the plan), your spouse is your primary Pension Plan beneficiary automatically.
○ If you are not married (or if you are married but not to an eligible spouse, as defined by the plan) you may designate any person as your primary Pension Plan beneficiary. However, if you are married and designate a primary Pension Plan beneficiary other than your spouse, your spouse must provide his/her written consent by completing Section 3 below. Your spouse must then sign and date this form in the space provided and your spouse's signature must be witnessed by a notary public.

2. Butler filed a cross-appeal from the district court's failure to award her attorney fees. Appeal No. 94–1431. However she subsequently filed a motion to dismiss that appeal pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure. The motion was granted prior to oral argument on the remaining appeals.

unless the plan gives the administrator discretion to interpret plan terms or determine benefits eligibility. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). There is no dispute that Encyclopedia Brittanica had such discretion in this case. Thus, the administrator's decision is reviewed under an arbitrary and capricious standard. *Loyola Univ. of Chicago v. Humana Ins. Co.,* 996 F.2d 895, 898 (7th Cir.1993) ("In the event that the administrator's discretion is unrestrained or limited only by the requirement of good faith, the arbitrary and capricious standard of review is proper."). We review the district court's order granting a motion for summary judgment under a *de novo* standard. *Kreutzer v. A.O. Smith Corp.,* 951 F.2d 739, 743 (7th Cir.1991).

## A. Butler's Entitlement to Pension Plan Benefits

Encyclopedia Brittanica's Pension Plan provides three basic types of benefits: Article VI provides the "Normal Retirement Benefit" for employees who terminate their employment on or after attaining normal retirement age; Article VII provides an "Early Retirement Benefit" for employees who terminate their employment on or after attaining early retirement age but before attaining the normal retirement age; and Article X provides "Pre–Retirement Death Benefits" in the case where an employee dies before he or she begins receiving retirement benefits. Celia Cotini died at age 65 while still employed by Encyclopedia Brittanica. Therefore, Article X provides the applicable benefit.

In denying Butler's claim, Encyclopedia Brittanica found that the preretirement death benefit in section 10.2 of the pension plan is available only to a surviving spouse, and the plan did not allow an employee or spouse to waive this benefit in favor of another beneficiary. The district court rejected this interpretation, finding that waiver was clearly allowed under Article XI of the plan. We find that the district court's construction was certainly plausible. However, a review of the Pension Plan as a whole shows that Encyclopedia Brittanica's interpretation is

equally permissible and, therefore, not arbitrary and capricious.

Article X provides, in pertinent part, as follows:

10.1. *General.* If a Member dies before a Benefit Commencement Date ..., there shall be no death benefits payable except those specified in this Article X.

10.2. *Pre–Retirement 100% Spouse's Death Benefit.*

(a) *Entitlement.* A Pre–Retirement 100% Spouse's Death Benefit will be payable if a Member dies before a Benefit Commencement Date, is survived by his Eligible Spouse, and—

. . . . .

(2) dies while employed by an Employer or an Affiliate, provided he has attained Early Retirement Age or Normal Retirement Age, ...

. . . . .

There shall be no reduction in a Member's Accrued Benefit on account of death benefit coverage under this Section.

(b) *Amount.* The amount of the monthly benefit payable to the surviving Eligible Spouse is the amount of the hypothetical monthly early retirement benefit which would have been payable during the life of the Member if the Member had retired on the first day of the month following the month in which he died and his retirement benefit was payable in the form of the Five–Year Certain Joint and Survivor's Annuity described in subsection 11.5(c), with 100% of the amount payable to the Member continued to the Eligible Spouse....

(c) *Commencement and Payment.* Such death benefit shall be payable as of the first day of the calendar month following the month in which the Member died, and shall be payable monthly for the remainder of the Eligible Spouse's Life, but in no case shall fewer than 60 monthly payments be made. Notwithstanding the preceding sentence, if the lump sum Actuarial Equivalent of the Eligible Spouse's death benefit is $3,500 or less, the Plan Administration Committee shall pay such lump sum amount to the Eligible Spouse in

lieu of the Pre–Retirement 100% Spouse's Death Benefit.

. . . . .

10.3 *Pre–Retirement 50% Spouse's Death Benefit.*

(a) *Entitlement.* A Pre–Retirement 50% Spouse's Death Benefit will be payable if a Member dies after he has completed five years of Vesting Service or has attained Normal Retirement Age and before his death qualifies his Eligible Spouse for a death benefit under Section 10.2, and if the Member is survived by his Eligible Spouse, regardless of whether the Member is employed by an Employer at the time of his death.

. . . . .

10.4 *Pre–Retirement Single Sum Death Benefit.*

(a) *Entitlement.* A Pre–Retirement Single Sum Benefit shall be payable to the Beneficiary of a Member upon the Member's death unless either the Pre–Retirement Spouse's Death Benefit described in either Section 10.2 or Section 10.3 is payable or a single sum distribution was elected by a Member under subsection 8.3(b).

(b) *Amount.* The Pre–Retirement Single Sum Death Benefit shall be the Member's Accumulated Contributions on the date as of which the benefit is payable.

(c) *Payment.* The Pre–Retirement Single Sum Death Benefit shall be paid to the Beneficiary as soon as administratively practicable following the Plan Administration Committee's receipt of proof of the Member's death.

Section 10.2 obviously is the applicable provision here because Celia Cotini died after reaching normal retirement age but while still employed by Encyclopedia Brittanica. The clear language of this section provides that the death benefit is payable to the eligible spouse; there is no provision within this section that would allow the spouse to waive the benefit. The district court, however, found that waiver was allowed under section 11.7 of the plan, which provides:

11.7. *Beneficiary.* A Member, from time to time, by signing a form furnished by the Plan Administration Committee, may designate any legal or natural person or persons (who may be designated contingently or successively) to whom any benefits to which a Beneficiary may become entitled under the Plan are to be paid and the form in which such benefits are to be paid if the Member dies before he receives all of such benefits; provided, however, that if a Member is married on the date of his death, any designation of a form of benefits or of a person other than his Eligible Spouse as Beneficiary shall be effective only if consented to in writing by his Eligible Spouse, which consent may not be changed without spousal consent (unless the consent of the Eligible Spouse expressly permits designations by the Member without any requirement of further consent by the spouse). Such consent must be in writing filed with the Plan Administration Committee, must acknowledge the effect of such consent and must be witnessed by a notary public or a Plan representative appointed or approved by the Plan Administration Committee. A Beneficiary designation form will be effective only when the signed form is filed with the Plan Administration Committee while the Member is alive and will cancel all Beneficiary designation forms signed earlier. Except as otherwise specifically provided in this Section, if a deceased Member failed to designate a Beneficiary as provided above, or if the designated Beneficiary of a deceased Member dies before him or before complete payment of the benefits to which a Beneficiary may otherwise become entitled, such benefits shall be paid to the Member's surviving spouse or, if there is no surviving spouse, to the Member's surviving children (per stirpes) or, if he has no children, to the legal representative or representatives of the estate of the last to die of the Member and his Beneficiary.

Under the district court's interpretation, section 11.7 "unambiguously provides that '*any* benefits' due to a beneficiary may be designated to be paid to any person provided the eligible spouse consents." *Butler,* 843 F.Supp. at 395. The key question is what is meant by the phrase "any benefits to which a

Beneficiary may become entitled under the Plan." The district court concluded that Article X's preretirement death benefit was a benefit due to a beneficiary because section 2.1(g) of the Pension Plan defines a beneficiary as "any person, persons or entity described in Section 11.7 entitled to receive death benefits[ ]" and eligible spouses are among the persons described in section 11.7 as being entitled to death benefits. In other words, the district court found that eligible spouses could be considered beneficiaries under section 11.7. Therefore, any benefit payable to an eligible spouse is a benefit that can be waived and paid to another beneficiary.

Encyclopedia Brittanica argues that the district court read section 11.7 too broadly and out of its proper context. Under the company's interpretation, section 11.7 merely identifies the mechanism for designating a particular person or entity as a beneficiary; it was not intended to identify the types of benefits that may be paid to a beneficiary. The latter is accomplished through other provisions in the plan. Specifically, Article X itself states that benefits under sections 10.2 and 10.3 are payable to an "Eligible Spouse" while section 10.4 provides for payments to a "Beneficiary." *See* Pension Plan § 10.2(b) ("The amount of the monthly benefit payable to the surviving Eligible Spouse...."); *id.* § 10.3(b) (same); *id.* § 10.4(a) ("A Pre–Retirement Single Sum Benefit shall be payable to the Beneficiary of a Member...."). Thus, while eligible spouses may also be named as beneficiaries under section 11.7, that only means that the spouse will receive the benefits that the plan provides for a "beneficiary;" it does not mean that the benefits that have been expressly earmarked for an "eligible spouse" also must be considered as benefits that are due to a "beneficiary."

We find Encyclopedia Brittanica's construction reasonable given the overall structure of the Pension Plan. As the company points out, Articles VI through X of the plan are intended to establish the retirement benefits that are available and the persons who

qualify for such benefits while Article XI, entitled "Retirement Settlement Forms," establishes the mechanisms or procedures for obtaining those benefits—i.e., how the benefits are to be paid out. For example, section 11.2 provides that an employee who is married to an eligible spouse on the benefit commencement date generally "shall receive his retirement benefit in the form of the Qualified Joint and 50% Spouse's Annuity...." However, sections 11.2 and 11.3 provide that an employee and his spouse may elect to receive their benefits in another form, such as a "Five Year Certain Life Annuity" or a "Five Year Certain Joint and Survivor's Annuity." Section 11.5 describes how benefits are paid under each form of annuity. Within the context of these provisions in Article XI, then, it makes sense to view section 11.7 as merely a procedural provision that establishes the mechanism for naming a person or entity as a beneficiary on the retirement settlement forms.

Encyclopedia Brittanica's construction is also consistent with ERISA's requirements and the applicable tax regulations. Every pension plan governed by ERISA must provide that if a vested participant in the plan dies before receiving benefits, a "qualified preretirement survivor annuity shall be provided to the surviving spouse of such participant." 29 U.S.C. § 1055(a)(2); 26 C.F.R. § 1.401(a)–20.[3] ERISA states, as a general rule, that every plan must provide that a participant and his spouse may elect to waive this benefit. 29 U.S.C. § 1055(c)(1). ERISA further requires that

> (2) Each plan shall provide that an election under [§ 1055(c)(1)] shall not take effect unless—
>
> > (A)(i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without

---

**3.** ERISA-governed plans also must provide that if a vested participant does not die before the annuity starting date, "the accrued benefit payable to such participant shall be provided in the form of a qualified joint and survivor annuity...." 29

U.S.C. § 1055(a)(1). Both of these provisions were enacted as a means of providing financial security to the surviving spouse of a plan participant.

any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public ...

*Id.* § 1055(c)(2), and that every plan shall provide each participant with a written explanation of the terms and conditions of the qualified preretirement survivor annuity. *Id.* § 1055(c)(3)(B). This writing must explain not only the terms and conditions of the qualified preretirement survivor annuity, but also the effect of an election to waive the benefit, the spouse's right's under § 1055(c)(2), and the right to revoke the waiver. *Id.*

Encyclopedia Brittanica argues that its plan fails to comply with all of the requirements in this section of ERISA. Although section 11.7 of the plan arguably could be interpreted as allowing a spouse to waive the preretirement death benefit, thus satisfying the requirements of § 1055(c)(2), Encyclopedia Brittanica points out that its plan does not provide the written explanation required by § 1055(c)(3) with respect to the preretirement death benefits.[4] Accordingly, the Pension Plan would be in violation of ERISA if, as the district court found, the plan allows for waiver of these benefits.

Significantly, ERISA provides that these requirements shall not apply if the qualified preretirement survivor annuity benefit "may not be waived (or another beneficiary selected) and if the plan fully subsidizes the costs of such benefit." *Id.* § 1055(c)(5)(A). The parties do not dispute that this benefit is fully subsidized by Encyclopedia Brittanica. The company, therefore, argues that its interpretation of the plan would be in full compliance with § 1055(c)(5) because its interpretation would not allow the preretirement death benefit to be waived. Accordingly, the company argues that its construction is preferable to the district court's interpretation, which could have adverse tax ramifications for the plan.

As a final policy matter, Encyclopedia Brittanica argues that the district court's interpretation would create a benefit disparity between married and unmarried employees. This disparity would result from the fact that the preretirement death benefit is available only when a plan participant has a surviving spouse. Under the district court's interpretation, the plan would allow married participants to waive this benefit in favor of their children, grandchildren or other beneficiary. However, unmarried participants would not have such a benefit that their beneficiaries could receive. Encyclopedia Brittanica's desire to avoid this inequity establishes an additional sound basis for interpreting its plan as prohibiting such a waiver.

Under the arbitrary and capricious standard, we will not upset Encyclopedia Brittanica's determination unless it is "downright unreasonable." *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir.1994) (quoting *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990)).

> "[A] court will not set aside the denial of a claim if the denial is based on a reasonable interpretation of the relevant plan documents." Nor will it do so where the trustee has based its decision " 'on a consideration of the relevant factors' " that encompass the " 'important aspect[s] of the problem' " before it. If the trustee makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, i.e., one that makes a "rational connection" between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached, then the trustee's decision is final.

*Cuddington v. Northern Indiana Pub. Serv. Co.*, 33 F.3d 813, 817 (7th Cir.1994) (quoting *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 900 F.2d 1138, 1141 (7th Cir.1990)). Based upon the foregoing analysis, Brittanica's denial of benefits was clearly based upon a reasonable interpretation of its plan. There-

---

4. ERISA provides similar requirements for waiving a qualified joint and survivor annuity (QJSA). 29 U.S.C. § 1055(c)(1), (2), & (3)(A). Encyclopedia Brittanica's plan clearly satisfies these requirements for the QJSA in section 11.3. However, there are no comparable provisions in the plan for the preretirement death benefit.

fore, while the district court's interpretation may have merit of its own, Brittanica's construction must prevail.

The language used on the beneficiary designation form and in an employee booklet describing the pension benefits do not compel a different result. The beneficiary designation form states that "I [the employee] designate the following person as my primary beneficiary to receive—in the event of my death—any amounts *payable to my beneficiary* under the terms and provisions of the Encyclopaedia Brittanica Pension Plan." (Emphasis added). The spouse's consent to the waiver acknowledges that "any amounts *payable to my spouse* [i.e., the covered employee] under the terms and provisions of the Encyclopaedia Brittanica Pension Plan will be paid—in the event of my spouse's death—to the designated primary beneficiary." (Emphasis added). This language is consistent with Encyclopedia Brittanica's interpretation that a beneficiary can be designated to receive only those benefits that are expressly earmarked for a "beneficiary" under the pension plan, such as the benefits in section 10.4 and 11.5(a) and (c).

The employee booklet's description of the plan also supports Encyclopedia Brittanica's interpretation. The booklet states that "[y]our eligible spouse will be entitled to a spouse's benefit if you die before your pension benefit starts...." After explaining how the amount of the benefit is calculated, the booklet states: "If you do not have an eligible spouse, or you don't meet the requirements for an eligible spouse's benefit when you die, your beneficiary will receive a single payment of any contributions you made before May 1, 1985, with interest." The booklet goes on to state:

**How to Enroll**

You do not have to sign an enrollment form to be a member of the EarningsPlus Pension Plan since you are automatically covered when eligible. However, you should sign a beneficiary designation form to ensure that any benefit due if you die before retirement is paid to the person of your choice.

The latter statement, if taken alone, might suggest that a beneficiary could be designated to receive any benefits available under the plan. However, when read in its proper context, the provision does not establish such a right; it merely states the proper procedure to be followed to name the beneficiary who is to receive the single sum payment of an employee's contributions to the pension plan if the employee dies without an eligible spouse.

Moreover, as Encyclopedia Brittanica points out, this booklet was distributed in May 1985 as an initial announcement of the general terms of the new pension plan. The booklet expressly cautions that it "only summarizes the key features of the EarningsPlus Program, and is not a substitute for the appropriate plan documents, which will legally govern the Program." The booklet was superseded in July 1985 by an official Summary Plan Description that states with respect to naming a beneficiary: "You must name someone as your beneficiary to receive any benefits payable upon your death *that are not paid automatically to your spouse.*" (Emphasis added). There is no indication whatsoever that the spouse's benefits can be waived in favor of another beneficiary.

For these reasons, we find that Encyclopedia Brittanica's decision to deny Butler's claim for the preretirement death benefits was not arbitrary and capricious. Accordingly, the district court's judgment in favor of Butler must be reversed and remanded to enter judgment in favor of Cotini, Encyclopedia Brittanica, and the Equitable Life Assurance Society of the United States with respect to the Pension Plan benefits.

**B. Validity of the Spousal Consent Form**

Anthony Cotini argues that Nicolette Butler is not entitled to the benefits under either the Pension Plan or the Savings Plan because the beneficiary designation forms submitted by Celia Cotini were invalid. Because we have already determined that Butler cannot receive the pension funds, we will address only the validity of the beneficiary form for the Savings Plan.[5]

---

5. The same general analysis would apply to the

Pension Plan's form, however, inasmuch as it is

As set forth above, ERISA provides that if a pension plan allows a participant to waive a qualified joint and survivor annuity or a qualified preretirement survivor annuity, then the plan must provide that such a waiver shall not take effect unless the participant's spouse consents in writing to the waiver. 29 U.S.C. § 1055(c)(2). The parties agree that this requirement also applies to the Savings Plan because ERISA § 1055(b)(1)(C), which applies to individual account plans, incorporates the spousal consent rules in § 1055(c)(2). *Id.* § 1055(b)(1)(C)(i).

Section 1055(c)(2) further states that the waiver is not valid unless the spouse's written consent "acknowledges the effect of such election and is witnessed by a plan representative or a notary public...." *Id.* § 1055(c)(2)(A)(iii). The Savings Plan incorporates this requirement in section 2.1(b), which states that the participant's "beneficiary" under the Savings Plan is the participant's spouse unless the spouse consents to the designation, which "shall be in writing, shall acknowledge the effect of such designation, shall be witnessed by a Plan representative or a notary public...."

Anthony Cotini does not dispute the fact that the form he signed acknowledged the effect of his waiver. However, he contends that the consent form is invalid because he did not sign the document in the physical presence of a plan representative or a notary public and, therefore, the document was not "witnessed" as required by § 1055(c)(2).

Cotini's argument has considerable appeal, given the usual dictionary definition of the word "witness" as meaning "[t]o see or observe. To act as an observer for the purpose of attesting." *Ballentine's Law Dictionary* 1375 (3d ed. 1969). In fact, the district court appears to acknowledge that the literal terms of § 1055(c)(2) would impose a physical presence requirement because if a consent form is not signed in the presence of the notary public or plan representative, "there is a risk that the signature is not genuine." *Butler*, 843 F.Supp. at 396. But the district court went on to state that there is no such risk in this case because Cotini acknowledged that he had signed the documents. Thus, the

virtually identical to the Savings Plan form in all

district court concluded that "[t]he purposes of the statute are satisfied where the spouse does not dispute his signature on the form, but signed it outside the presence of any notary public or plan representative." *Id.*

Cotini argues that the manifest purpose of the spousal consent requirement was to ensure that a spouse is "involved in making choices with respect to retirement income on which the spouse may also rely." S.Rep. No. 575, 98th Cong., 2d Sess. 12 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2547, 2558; *see also Pedro Enter., Inc. v. Perdue*, 998 F.2d 491, 494 (7th Cir.1993) ("we understand the ERISA requirements of acknowledgment, writing and notarization to reflect the concern that any waiver be knowing and considered."). In his view, this purpose is served only by requiring that the spouse sign the document in the presence of a notary public or plan representative. We disagree.

■ If the intent of Congress was to ensure that spouses participate in the waiver decision, that purpose is served by the fact that the consent form contains language acknowledging the effect of such election. When a spouse ascribes his or her signature beneath such an acknowledgment, the spouse has affirmatively participated in the decision to waive the applicable benefits. Contrary to Cotini's view, physical presence before a notary would not ensure that the spouse had read and understood the legal ramifications of that acknowledgment. A notary's function is simply to certify the validity of the signature; the notary does not attest to the validity of the statements made in the document itself. *See Commonwealth v. Frey*, 258 Pa.Super. 288, 292, 392 A.2d 798, 800 (1978) ("notarization certifies the fact of execution by a person who purports to be the signer but not any fact beyond that...."); Uniform Laws on Notarial Acts § 2 comment. (1982) (in witnessing or attesting a signature, "only the fact of the signature, not the intent to execute the instrument, is certified by the notarial officer."); *cf.* 58 Am.Jur.2d *Notaries Public* § 75 (1989) ("the notary's certificate is not deemed to certify or guarantee the facts stated in the instrument to which it is at-

relevant respects.

tached, and to hold otherwise would make the surety on the notary's bond an insurer of all statements contained in the instrument notarized.").

■ There is nothing in ERISA's statutory language that would suggest that anything more than the usual notarization procedures are required to "witness" the consent form. Thus, we find that ERISA would not require the notary or plan representative to question whether a spouse fully understands the effect of what he or she is signing or otherwise attempt to ensure that a spouse has made an informed and knowing consent.

Cotini argues that the district court's decision circumvents ERISA's literal language and, in effect, upholds Encyclopedia Brittanica's decision under a substantial compliance theory. He argues that this court rejected a substantial compliance argument in an analogous ERISA case. *Production and Maintenance Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397 (7th Cir.1992).

At issue in *Roadmaster* was whether the company had complied with ERISA § 204(h), which requires "a written notice ... to each participant" whenever an ERISA plan is amended. The company argued that it fulfilled this requirement when it sent a letter to the union and posted a notice on company bulletin boards. In rejecting this argument, this court noted that the clear language of ERISA mandated individual notice to each participant. *Id.* at 1403. However, the opinion does not rest on that decision alone; it goes on to state that even if § 204(h) were construed to allow a general posted notice, that notice must still be designed to reach "each participant." When Roadmaster posted its notice, many employees were on vacation and the company admitted that not all of its employees could have seen the notices. Thus, the posted notice did not fulfill the statutory purpose of ensuring that every participant received notice of the amendment. In view of these alternative holdings, *Roadmaster* strongly suggests that compliance with ERISA's literal terms is required but the decision does not necessarily foreclose the possibility that the substantial compliance doctrine may be invoked in a proper case.

Butler and Encyclopedia Brittanica, on the other hand, have failed to cite any authority that has applied the substantial compliance doctrine to an unambiguous ERISA requirement. We are aware of a recent Fourth Circuit case which adopted the substantial compliance doctrine. *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 562–65 (4th Cir. 1994). However, the court did so as a matter of federal common law based upon the fact that ERISA was silent on the particular issue before the court. As this court and others have held, "[c]ourts may develop ... a federal common law only where ERISA itself 'does not expressly address the issue before the court.'" *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647 (7th Cir.1993) (quoting *Nachwalter v. Christie*, 805 F.2d 956, 959 (11th Cir.1986)). Thus, we cannot adopt a substantial compliance doctrine as a matter of federal common law in this case if it would conflict with ERISA's literal requirement that a spousal consent be "witnessed."

The Supreme Court has recognized that courts, in interpreting a statute, "[u]nquestionably ... have some 'scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results ... or would thwart the obvious purpose of the statute.'" *Commissioner of Internal Revenue v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965) (quoting *Helvering v. Hammel*, 311 U.S. 504, 510–11, 61 S.Ct. 368, 371, 85 L.Ed. 303 (1941)). Arguably, compliance with ERISA's literal language in this case would lead to the absurd result of invalidating a spousal consent form that Anthony Cotini admits that he signed but now attempts to disavow on the technicality that he did not sign it in the physical presence of the notary. We need not resolve this issue, however, because even if we were to apply a strict construction of the witnessing requirement, we find that Cotini lacks sufficient evidence to prove that the consent form he signed was not properly witnessed.

■ A notary public's certificate of acknowledgment, regular on its face, carries a strong presumption of validity. 1 Am.Jur.2d

*Acknowledgments* § 83 (1994) ("If a certificate of acknowledgment is complete and regular on its face, the facts stated in the certificate are presumed to be true[;] ... it is also presumed ... that the legal duties incumbent upon the officer in doing so have been properly performed."). Accordingly, the courts have held that in order to overcome this presumption, clear and convincing evidence is required. *See, e.g., id.* § 84; *Witt v. Panek*, 408 Ill. 328, 333, 97 N.E.2d 283, 285 (1951) ("the rule is that the record of conveyance and the certificate of acknowledgment can be overcome only by proof which is clear, convincing and satisfactory, and by disinterested witnesses.").[6]

 The notary's certificate in this case unambiguously states that Anthony Cotini appeared personally before the notary on August 27, 1990, and executed the spousal consent form. Cotini's evidence attacking the certificate falls far short of the clear and convincing standard. Although he states that he was never physically present before the notary, his statement is entitled to little weight because of his obvious self interest in the case. He further points to the fact that the notary stated that she does not know Anthony Cotini and had no recollection as to whether he had personally appeared before her to sign the documents. However, only a rare individual can remember every person with whom the individual has a brief encounter. Indeed, that is the basic reason for recognizing a presumption of validity for a notary's certificate in the first place. If a notary's certificate were vulnerable to attack every time an interested witness contradicted the certificate and the notary did not have a personal recollection of the event, "it would shock the moral sense of the community, deny justice, and create chaos in land titles[ ]" and every other type of document requiring notarization. *Koepke v. Schumacher*, 406 Ill. 93, 98, 92 N.E.2d 152, 155 (1950).

Somewhat troubling is the notary's concession that while her general practice is to see a person actually sign a document before she will notarize it, she sometimes notarized documents without the signing party being present. However, while this statement suggests that her certificate may be invalid in some cases, her testimony does not provide the clear and convincing evidence required to prove that the certificate was false in this particular case. In other words, although Louise Joslyn may have notarized some documents for employees who claimed that the document was signed by the employee's spouse, there is no competent evidence that Joslyn did so for Celia Cotini.

Based upon this record, we find that the spousal consent form signed by Anthony Cotini was valid and, as a result, Encyclopedia Brittanica properly paid Celia Cotini's Savings Plan benefits to Nicolette Butler.

## III. CONCLUSION

For the foregoing reasons, the district court's judgment in favor of Nicolette But-

---

6. Cotini argues that this rule is a matter of state law and that ERISA preempts the application of state law. However, reference to state law is proper because ERISA has provided for spousal consents to be witnessed by a notary public, an office which, by definition, is a creature of state law. Therefore, it would be logical to consult state law to determine the effect of a notary's certification.

Secondly, and perhaps more importantly, ERISA preemption "does not mean that all common law concepts are automatically inapplicable in the ERISA context." *Thomason*, 9 F.3d at 647. Because ERISA is silent as to the precise effect of a notarial certificate, the courts "must construct a federal common law rule to effectuate the policies underlying ERISA." *Id.* "In so doing, they may use state common law as a basis for new federal common law, but only to the extent that state law is not inconsistent with congressional policy concerns." *Id.* We find that the presumption of validity accorded to a notary's certificate is not inconsistent with the policies underlying ERISA. Therefore, we would adopt this rule as a matter of federal common law to fill the interstices of ERISA. Moreover, several longstanding Supreme Court cases suggest that this rule is already part of the federal common law. *See, e.g., Young v. Duvall*, 109 U.S. 573, 577, 3 S.Ct. 414, 416, 27 L.Ed. 1036 (1883) (stating that if an acknowledgment can be contradicted, "the proof to that end must be of such a character as will clearly and fully show the certificate to be false or fraudulent. . . . The mischiefs that would result from a different rule could not well be overstated."); *Northwestern Mut. Life Ins. Co. v. Nelson*, 103 U.S. 544, 549, 26 L.Ed. 436 (1880) ("The acknowledgment of a deed can only be impeached for fraud, and the evidence of fraud must be clear and convincing.").

ler's right to the Savings Plan benefits is hereby AFFIRMED. However, that portion of the judgment declaring Butler's right to the spouse's death benefits under the Pension Plan is REVERSED AND REMANDED with directions to enter judgment in favor of Anthony Cotini, Encyclopedia Brittanica and the Equitable Life Assurance Society of the United States.