**In re the Matter of LARRY L. THOMPSON REVOCABLE TRUST,**

**Larry L. Thompson Revocable Trust, Derek Thompson and Vicki Thompson Craver, Appellants,**

v.

**Deanna Thompson Stull, Appellee.**

**No. 54A01–0602–CV–56.**

Court of Appeals of Indiana.

Nov. 20, 2006.

Gregory E. Steuerwald, Steuerwald, Zielinski & Witham, Danville, IN, for Appellant.

James E. Ayers, Wernle, Ristine & Ayers Crawfordsville, IN, for Appellee.

MATHIAS, Judge.

This is an appeal from the Montgomery Superior Court regarding the distribution of savings plan benefits accumulated by Larry L. Thompson ("Thompson"), who is now deceased. Thompson's children and the Larry L. Thompson Revocable Trust

appeal the trial court's order of partial summary judgment concluding that Thompson's spouse, Deanna Stull ("Stull"), did not properly consent to a beneficiary designation as required under the Employee Retirement Income Security Act ("ERISA"). We restate their issue on appeal as whether ERISA permits a spouse's consent to a beneficiary designation to be witnessed or notarized after the plan participant's death. Concluding that Stull both manifested intent to consent to the designation and substantially complied with ERISA's consent requirements in having her signature witnessed, we reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

Thompson created the Larry L. Thompson Revocable Trust (the "Thompson Trust") on November 6, 1991, appointing himself as the sole trustee. He then married Stull on November 30, 1996. At the time they were married, Thompson worked for R.R. Donnelley & Sons Company ("R.R. Donnelley"). He retired soon after in December 1996 and subsequently received a retirement package in the mail from R.R. Donnelley's office in Downers Grove, Illinois.

On December 26, 1996, Thompson executed an R.R. Donnelley employee savings program beneficiary election. He designated the Thompson Trust as the beneficiary of his employee savings plan accounts. The trust designated Stull along with Thompson's children from a previous relationship, Derek Thompson ("Derek") and Vicki Thompson ("Vicki"), as co-successors. On the same day, Stull signed a "Consent to Beneficiary Designation" form at her and Thompson's home. On the first page of the consent form, Thompson had designated the Larry L. Thompson Revocable Trust as his beneficiary for both his Voluntary Savings Fund and Deferred Compensation Savings plan. On the second page of the consent form Stull signed the provision that stated:

> I am aware that my spouse, Larry L. Thompson, has designated the above beneficiary under the Donnelley Employee Savings Program. I understand that as long as we remain married, I am entitled to be the beneficiary under this plan unless I consent to the above election, and that without my consent, any death benefits would be payable to me as surviving spouse.
>
> Knowing that death benefits will be paid to the above named beneficiary and not to me, I consent to this beneficiary designation under the Donnelley Employee Savings Program.

Appellant's App. p. 95.

Stull alleges that she signed and dated the Consent to Beneficiary Designation form on December 26, 1996, "in exchange for the promise that she would be a one-third beneficiary of the [Thompson] Trust." Br. of Appellee at 1. The space on the form providing for the signature of a plan witness or notary was left blank. Stull then personally packaged, sealed, and mailed the forms to the Des Plaines office of R.R. Donnelley. R.R. Donnelley never notified Thompson that there was a problem with the beneficiary designation forms.

Thompson died on February 13, 1998. Upon his death, Derek and Vicki sought payment from the Thompson Trust. At this time, R.R. Donnelley realized that Stull's signature on the spouse's consent form had not been witnessed or notarized. The company contacted Stull and Derek and proposed that Kim Keeling ("Keeling"), a plan representative, witness a re-signing of Stull's waiver. On April 17, 1998, Stull acknowledged and verified her prior signature on the original consent waiver in the presence of Keeling. This meeting produced two separate docu-

ments. On the first document ("Exhibit 9"), after Stull acknowledged her signature on a copy of the original consent form, Keeling signed on the line designated for the "Plan Witness or Notary," but she did not date her signature. On the second document ("Exhibit 8"), Stull's original signature and the date of December 26, 1996, are crossed out, and Stull resigned her name and dated it April 17, 1998. Below Stull's signature, Keeling also signed and dated the form April 17, 1998.[1] Appellant's App. p. 95. After this meeting, R.R. Donnelley distributed the funds to the Thompson Trust.

On December 16, 1999, Stull filed a petition in equity to impose a trust, or in the alternative to set aside and revoke consent to transfer and to obtain repayment of funds against Derek, Vicki, and the Thompson Trust (collectively the "Trust"). Stull moved for partial summary judgment on March 2, 2002, alleging that her signature was not properly witnessed or notarized as required by ERISA. The trial court granted partial summary judgment on August 2, 2002.

The Trust filed a motion to set aside summary judgment and its own motion for summary judgment on August 8, 2003. A hearing was conducted on November 16, 2005, after which the trial court denied the Trust's motions. The trial court concluded that the failure of Thompson and the Trust to properly execute the necessary documents could not be cured after Thompson's death.

The Trust filed a motion to certify for interlocutory appeal and stay proceedings on December 20, 2005, which the trial court certified on January 16, 2006. We accepted jurisdiction of this interlocutory appeal on April 4, 2006, and the Trust filed its notice of appeal on April 18, 2006. Additional facts will be provided as necessary.

## Standard of Review

Initially, we note that this is an interlocutory appeal from the trial court's order of summary judgment.

When reviewing a grant or denial of summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. All evidence must be construed in favor of the opposing party, and all

---

1. We find the Trust's argument that Keeling, a plan representative, could have potentially witnessed Stull's signature in 1996 completely unsubstantiated in the record. It is true that Keeling's signature as a witness is undated on Exhibit 9, but all the facts in the record indicate that Keeling subsequently signed this form in 1998 and chose not to date her signature per the advice of Daniel Wilkins, a fellow employee at R.R. Donnelley. We note that the affidavit of David Dykshorn, the Savings Plan Supervisor, states that the consent to beneficiary designation form was not witnessed and that in 1998 it was determined that if it were re-executed by Stull and properly witnessed it would be accepted. Appellant's App. p. 75. Furthermore, the summary

of a telephone call made to Stull on March 18, 1998, by Cheryl Moore, an employee of R.R. Donnelley stated that she had explained to Stull that the designation form was not notarized. *Id.* at 84. A subsequent fax to Jenny Lind from Daniel Wilkins, both employees at R.R. Donnelley, stated, "I WOULD SUGGEST THE DIVISION HR PERSON BE THE ONE TO SIGN. IMPORTANT: DO *NOT* DATE AND IGNORE WHERE IT SAYS SEAL (THIS IS FOR THE NOTARY)." *Id.* at 85 (emphasis in original). This is consistent with Stull's affidavit that she packaged and mailed the unwitnessed forms to R.R. Donnelley's office and then on April 17, 1998, met with Keeling for the first time to have her signature witnessed. *Id.* at 101.

doubts as to the existence of a material issue must be resolved against the moving party.

*Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 973 (Ind.2005) (citations omitted.) "The fact that the parties made cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct.App. 1997), trans. denied.

### Discussion and Decision

Stull contends that her consent to the beneficiary designation for Thompson's savings plan was invalid under ERISA as it was not contemporaneously witnessed by a plan representative or a notary public before Thompson's death. The Trust, on the other hand, maintains that Stull's waiver was effective because when she came to the office in 1998 after Thompson's death, she acknowledged her previous signature, and then signed the waiver again in the presence of a plan representative. The genuineness of Stull's signature is not at issue in this appeal as she freely admits it is "undisputed" she actually signed the beneficiary designation form on December 26, 1996, and again in the presence of a plan representative on April 17, 1998. Br. of Appellee at 2, 4. In essence, the issue in this appeal is whether ERISA 29 U.S.C. § 1055(c)(2)(A) (2002) should be strictly construed so as to invalidate a spouse's consent to waive her rights as a beneficiary that is not signed in the physical presence of a plan representative before the plan participant's death.

For a spouse to effectively waive her rights to the plan participant's retirement benefits, ERISA sets forth three primary requirements:

(i) the spouse of the participant consents in writing to such election,

(ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and

(iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.

29 U.S.C. § 1055(c)(2)(A). These three requirements for a spousal consent to designate a beneficiary apply to both pension plans and savings plans like the one at issue here. *See* 29 U.S.C. § 1055(b)(1)(C)(i) (2002) (incorporating the spousal consent rules from § 1055(c)(2)).

In 1994 the Seventh Circuit declined to resolve the issue of whether the witness requirement should be strictly construed or whether a spouse's waiver that substantially complied with the witnessing provision was effective. *Butler v. Encyclopedia Brittanica, Inc.*, 41 F.3d 285 (1994). In *Butler*, a husband challenged the consent to beneficiary designation form that he had signed, and which was notarized, claiming that his consent to the waiver was invalid as he had not signed the waiver in the presence of the witnessing notary public. The district court concluded that a "benefit fund may accept as valid a designation form that a spouse admits signing, but which was signed by the spouse outside the presence of the witnessing notary public or plan representative, without defeating any substantive statutory objective." 843 F.Supp. 387, 396 (N.D.Ill.1994), *rev'd in part.*

On appeal, the Seventh Circuit noted that the usual dictionary definition of the word "witness" is "[t]o see or observe. To act as an observer for the purpose of at-

testing." *Butler*, 41 F.3d at 293 (quoting Ballentine's Law Dictionary 1375 (3d ed.1969)). However, the court disagreed with the proposition that ERISA's purpose of ensuring that any waiver be knowing and considered "is served *only* by requiring that the spouse sign the document in the presence of a notary public or plan representative." *Id.* (emphasis added). The court subsequently explained:

> If the intent of Congress was to ensure that spouses participate in the waiver decision, that purpose is served by the fact that the consent form contains language acknowledging the effect of such election. When a spouse ascribes his or her signature beneath such an acknowledgment, the spouse has affirmatively participated in the decision to waive the applicable benefits. Contrary to [the appellant's] view, physical presence before a notary would not ensure that the spouse had read and understood the legal ramifications of that acknowledgment. A notary's function is simply to certify the validity of the signature; the notary does not attest to the validity of the statements made in the document itself.

*Id.*

The court then acknowledged that the U.S. Supreme Court has recognized that courts, in interpreting a statute, "[u]nquestionably . . . have some 'scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results . . . or would thwart the obvious purpose of the statute.'" *Id.* at 294 (quoting *Comm'r of Internal Revenue v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965)). The court then concluded that "[a]rguably, compliance with ERISA's literal language [to the fact scenario in *Butler]* would lead to the absurd result of invalidating a spousal consent

form that [the appellant] admits that he signed but now attempts to disavow on the technicality that he did not sign it in the physical presence of the notary." *Id.*

However, despite this dictum, the Seventh Circuit declined to adopt a substantial compliance doctrine as a matter of federal common law to permit a notary to "witness" a consent to beneficiary designation that was not signed in the notary's physical presence. Instead, the Seventh Circuit relied on the strong presumption of validity that a notary public's certificate of acknowledgement carries. *Id.* at 294–95. The court concluded as a matter of law that the husband had failed to present clear and convincing evidence to rebut this presumption of validity. *Id.*

Subsequently, in *Lasche v. Lasche*, 111 F.3d 863, 866 (1997), the Eleventh Circuit refused to extend *Butler* to instances where a spouse acknowledged his or her signature on the waiver form but the signature was never witnessed by a notary public or a plan representative. The court concluded that allowing a spouse's acknowledgement of his or her signature on the consent form to be an effective waiver would "contravene the explicit waiver requirements of ERISA that Congress has enacted." *Id.*

Recently, the Eastern District of New York faced a similar case where a wife apparently signed a waiver of surviving spouse benefits, which was subsequently notarized outside of her presence. *Alfieri v. Guild Times Pension Plan*, 446 F.Supp.2d 99 (2006). The district court concluded that her waiver was invalid as it did not properly conform to the formalities required by ERISA. *Id.* at 110. The court noted that the ERISA formalities "required in § 1055(c) are included to protect against the risks of a spouse's unwitting waiver of [his or her] rights." *Id.* at 108 (citing *Lasche*, 111 F.3d at 867).

However, the Missouri Court of Appeals has extended *Butler's* precedent. In *Herrero v. Cummins*, 930 S.W.2d 18, 20 (1996), *trans. denied*, the court held that a spouse's waiver of rights was effective where the wife admitted to signing the form and agreeing to have the document notarized outside of her presence. The court relied substantially on the Seventh Circuit's opinion in *Butler*, concluding that the "purpose of the [ERISA] statute is, thus, satisfied when the spouse does not dispute the authenticity of his or her signature on the form, although it may have been signed outside the presence of any notary public or plan representative." *Id.* The Missouri court's opinion does not, however, address the issue of federal common law and the doctrine of substantial compliance.

Nonetheless, federal courts have adopted the doctrine of substantial compliance regarding ERISA's provisions in other instances. For example, the Seventh Circuit has previously applied the federal common law doctrine of substantial compliance to a case where the policyholder designated a change of beneficiary but did not technically follow the requirements set forth by the provisions of the policy. *See Davis v. Combes*, 294 F.3d 931, 940–42 (2002). In *Davis*, the Seventh Circuit adopted the federal common law test for substantial compliance set forth by the Fourth Circuit in *Phoenix Mutual Life Insurance Co. v. Jackson*, 30 F.3d 554, 564 (1994). This test states:

> [A]n insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.

*Davis*, 294 F.3d at 941 (quoting *Phoenix Mut. Life Ins. Co.*, 30 F.3d at 564). The Seventh Circuit noted that this test requires evidence of intent and substantial completion of the benefit change process, and it does not require that the policy holder did "all he could" to effectuate the beneficiary designation. *Id.* Explaining why it relied on federal common law, the Davis Court noted that "[t]here is no explicit requirement in ERISA that a change of beneficiary form must be signed and dated in a specific manner." *Id.* at 940. Furthermore, ERISA is silent on the matter of which party shall be deemed the policy's beneficiary among disputing claimants. *Phoenix Mut. Life Ins. Co.*, 30 F.3d at 562. Therefore, we conclude, as did the courts in *Davis* and *Phoenix Mutual*, that we must also look to federal common law to determine whether the doctrine of substantial compliance should apply to the fact scenario at hand. We further conclude that the test adopted by the Seventh Circuit in *Davis*, though specifically pertaining to a policyholder's attempt to change the beneficiary, is also instructive to our analysis of the federal common law doctrine of substantial compliance and how it should apply to a spouse's attempt to effectuate a waiver of his or her rights.

The doctrine of substantial compliance does not by definition materially modify a plan, "but rather is simply a doctrine to assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance under the contract." *Phoenix Mut. Life Ins. Co.*, 30 F.3d at 563 (citation omitted). Unlike the fact scenarios in *Lasche, Alfieri*, and even *Butler*, which declined to adopt the doctrine of substantial compliance, in the case before us there is no dispute that Stull did in fact acknowledge her previous signature and then again sign the waiver of her rights in the presence of Keeling, the plan

representative, on April 17, 1998. In her brief, Stull admits that it is "undisputed" that she signed the consent to beneficiary designation form on December 26, 1996. Br. of Appellee at 4. Her facts also recite that Stull "was taken to R.R. Donnelley . . . and she re-signed the consent on April 17, 1998, *in Kim Keeling's presence." Id.* at 2 (emphasis added).

The evidence in this case leaves us with no doubt that Stull realized she was consenting to designate the Thompson Trust as Thompson's beneficiary both in December 1996 and again in April 1998. Stull's brief contends that she only signed the consent "in exchange for the promise that she would be a one-third beneficiary of the Trust." *Id.* If we take her statement at face value, it would certainly prove that her waiver was voluntary, as it was a bargained for exchange between her and her husband. It appears that Stull subsequently attempted to revoke her consent upon the Thompson Trust's repudiation of its obligation to her. *See id.* As in *Butler,* we conclude that "compliance with ERISA's literal language in this case would lead to the absurd result of invalidating a spousal consent form that [Stull] admits that [she] signed but now attempts to disavow on the technicality" that she did not sign the form in the physical presence of the plan representative before Thompson's death. *See Butler,* 41 F.3d at 294.

We also look to the federal common law test adopted by *Davis* to determine whether the policyholder's beneficiary designation is valid. We believe that this two-prong test gives further guidance on the issue of whether a spouse's consent to the policyholder's beneficiary designation is likewise valid. The first prong looks to the policyholder's intent to make the change. *Davis,* 294 F.3d at 941. As previously noted, it is undisputed that Stull's intention was to consent to the designation

by signing the form both in 1996 and again in 1998. The second prong of the *Davis* test looks to whether the policyholder attempted to effectuate the change by undertaking positive action, which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy. *Id.* The 1998 meeting between Stull and Keeling produced two documents, one which was acknowledged before Keeling and one which was actually re-executed and witnessed before Keeling. Under these facts, the actions taken by Stull were for all practical purposes similar to the witnessing requirement needed to effectively consent to Thompson's change of beneficiary. Thus, we conclude that under the federal common law doctrine of substantial compliance, Stull's actions should, in reality, be considered the equivalent of compliance with § 1055(c)(2)(A). *See Phoenix Mut. Life Ins. Co.,* 30 F.3d at 559.

We further note that upon examination of the three requirements set forth in § 1055(c)(2)(A), we can find no requirement that a spouse necessarily must waive his or her rights *before* the death of the policyholder. It is common practice in wills and trusts for a beneficiary to renounce his or her rights to gifts made under a testamentary document after the decedent's death. *See, e.g., Schmidt v. Collins,* 556 N.E.2d 933 (Ind.Ct.App.1990); *In re Estate of Newell,* 408 N.E.2d 552 (Ind.Ct.App.1980); *In re Estate of Wisely,* 402 N.E.2d 14 (Ind.Ct.App.1980). As of yet, no federal court has found that technical compliance with ERISA requires that a spouse consent to the decedent's beneficiary designation before the policyholder's death. Therefore, we further conclude that Stull's consent executed on April 17, 1998, in Keeling's presence met all three requirements under ERISA § 1055(c)(2)(A). Furthermore, as noted above, given this subsequent re-executed

waiver, we have no doubt that the intent of ERISA's witnessing requirement, intended to establish that the spouse's waiver be voluntary, was met.

We realize that there will be situations where a failure to have such a beneficiary designation form contemporaneously witnessed by a plan representative or notary will cast significant doubt on whether the spouse actually consented to the change. However, it is likewise true that in other cases the evidence may unequivocally establish that the policyholder's spouse intended to consent to the beneficiary designation and substantially complied with ERISA's requirements. *See Davis*, 294 F.3d at 942. We believe the latter is the case here.

### Conclusion

Stull's waiver of rights is valid under ERISA as a matter of law, and therefore, summary judgment in favor of the Trust is appropriate.

Reversed and remanded for proceedings consistent with this opinion.

KIRSCH, C. J., and SHARPNACK, J., concur.