**Gordon KRAUT and Lenora Kraut, Plaintiffs–Appellants,**

v.

**WISCONSIN LABORERS HEALTH FUND, Defendant–Appellee.**

No. 92–3174.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1993.

Decided April 26, 1993.

114

John H. Zawadsky (argued), Whyte & Hirschboeck, Madison, WI, for plaintiffs-appellants.

Scott D. Soldon, Frederick Perillo (argued), Naomi E. Eisman, Previant, Goldberg, Uelmen, Gratz, Miller & Bruegeman, Milwaukee, WI, for defendant-appellee.

Before BAUER, Chief Judge, FLAUM, Circuit Judge, and WILL, Senior District Judge.*

WILL, Senior District Judge.

This case involves an appeal from the district court's grant of summary judgment to the defendant Wisconsin Laborers Health Fund, dismissing the plaintiffs' complaint under the Employee Retirement Income Security Act, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), for non-payment of benefits. For the reasons stated below, we affirm the ruling of the district court.

## I.

## BACKGROUND

The Wisconsin Laborers Health Fund (the "Fund") is a multi-employer, employee benefit trust organized and maintained under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The Fund is administered by a twelve-member Board of Trustees in accordance with a Trust Agreement. Although the Fund's Administrative Manager makes preliminary coverage determinations, beneficiaries may appeal his decisions to the Appeals Committee, which is composed of the Trustees. The Trustees are authorized under the Trust Agreement as the final authority in disputes concerning benefits and interpret conclusively the terms of the Trust Agreement and health care plan regarding both coverage and eligibility.

Gordon Kraut is a participant under the Fund's health care plan and his spouse— Lenora Kraut—is a beneficiary. The plan covers necessary medical expenses, making exceptions for certain general exclusions and limitations. On August 11, 1989, Dr. Joseph M. Litow submitted on behalf of Lenora Kraut a request to the Fund for predetermination of benefits for orthognathic surgery and preliminary orthodontics, and in a separate letter requested approval for certain diagnostic procedures. The Administrative Manager made a pre-treatment determination granting coverage for the orthognathic surgery on August 30, 1989, denied coverage for orthodontics (except for the lifetime maximum coverage of $500 under the dental plan) on September 1, 1989, and approved the diagnostic tests on October 6, 1989, subject to a caveat.[1]

On October 18, 1989, Gordon Kraut appealed to the Fund, arguing that the medical plan should cover both the surgery and the orthodontia. On October 23, 1989, the Administrative Manager confirmed by letter that the surgery would be covered under the medical plan and that the preliminary orthodontics could be covered only under the dental plan. On November 2, 1989, the Appeals Committee held a hearing at which they considered the Krauts' October 18, 1989 appeal. The only issue appealed to the committee at this time concerned plan coverage of the orthodontics. The Appeals Committee denied the Krauts' appeal, confirming that the treatment of the orthodontics could be covered only under the dental plan. On December 4, 1989, the Administrative Manager officially notified the Krauts that their appeal was denied and that the October 23, 1989 letter would stand.

At their November 1989 meeting, the Trustees also directed the Administrative Manager thereafter to refer all claims for benefits relating to jaw realignment to the Appeals Committee and further ordered him

---

* The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. The letter noted:

 Treatment of temporomandibular joint syndrome is not a covered expense under your Plan. However, as your wife, Lenora, is also being treated for a significant orthognathic deformity, benefits have also been approved for both these diagnostic procedures as well as the proposed surgery to correct the deformity.... Our decision in Lenora's case should not be misconstrued. Any cases of a similar nature will be individually reviewed and benefits, if any, will be determined on an individual basis.

to discuss with the Trustees any such claims before communicating with participants concerning potential coverage. During the months following the Krauts' appeal, the Fund solicited several opinions regarding coverage of orthognathic osteotomies and other orthognathic surgeries. In April 1990, Union Laborer Life Insurance Company ("ULLICO"), a medical consultant, opined that such surgeries were excluded because they constituted surgeries to adjust dental occlusion. In June 1990, another consultant, Dr. James W. Hill, concluded that orthognathic surgery was not a covered medical benefit because such surgery constituted treatment of craniomandibular disorders. Accordingly, the Fund subsequently denied at least three other claims for similar temporomandibular ("TMJ") syndrome treatment benefits under the plan.

As Lenora Kraut had not proceeded with any of the previously requested surgery, the Fund received another request for predetermination of benefits for Lenora Kraut's orthognathic surgery from Dr. Litow on April 25, 1991. Unlike the first request, however, it was not accompanied by a request for diagnostic procedures indicating that TMJ dysfunction was involved. On May 22, 1991, the Administrative Manager sent an initial determination letter to Gordon Kraut, denying coverage for the proposed orthognathic surgical procedures due to the plan exclusions for reconstructive surgery and surgery to adjust dental occlusion. In support of their appeal to the Appeals Committee from this initial determination, the Krauts submitted July 5, 1991 and July 17, 1991 letter reports from Dr. Litow and Dr. George Benton, who diagnosed Lenora Kraut's condition as TMJ syndrome. After notifying the Appeals Committee that they would proceed with surgery "without knowledge of whether the surgical and orthognathic work is covered", Lenora Kraut had the proposed surgery on October 31, 1991. *See* Ex. X. to Supp.Aff. of Richard A. Franken.

On November 21, 1991, the Appeals Committee denied the Krauts' second request for coverage for three reasons: (1) the requested surgery was reconstructive; (2) the requested surgery proposed to adjust dental occlusion; and (3) the requested surgery was related to TMJ syndrome. Each of the above constitutes a separate exclusion under the plan. The Appeals Committee also rejected the Krauts' assertion that the Fund was estopped to apply the exclusions where the Krauts had incurred no expenses in reliance upon the earlier incorrect determination by the Administrative Manager in October 1989, prior to the new May 22, 1991 determination denying coverage.

The Krauts brought suit against the Fund in the United States District Court for the Western District of Wisconsin for wrongful refusal of benefits, pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B). The district court granted summary judgment in favor of the Fund. It is from this ruling that the Krauts now appeal.

## II.

### ANALYSIS

The Krauts now seek reversal of the district court's grant of summary judgment, which basically affirmed the Fund's refusal to pay for Lenora Kraut's orthognathic surgery. The Krauts present three issues for our review: (1) whether the Fund was estopped from reversing its earlier position which granted medical coverage for the proposed surgery; (2) whether the Krauts were denied their right to full and fair review in violation of ERISA § 503, 29 U.S.C. § 1133; and (3) whether the Fund was arbitrary and capricious in denying coverage for Lenora Kraut's surgery.[2]

#### A. *Estoppel*

■ The Krauts argue that the Administrative Manager's denial of their 1991 request for benefits is without legal effect due

---

**2.** The Krauts also challenge the district court's consideration of Dr. Litow's deposition testimony, arguing that its admission violated Federal Rule of Civil Procedure 56(e). The district court explicitly limited its use of this testimony. Memorandum and Order, at 9 ("[T]o the extent that

Dr. Litow's testimony represents subsequent interpretations of his letters, the testimony will not be considered for that purpose."). Accordingly, we find that the consideration of this testimony was not violative of Rule 56.

to the Fund's prior final authorization of medical plan coverage for the same surgical procedure in 1989. This is essentially an estoppel argument. The plaintiffs also assert that the Administrative Manager cannot deny the award of benefits because the Trustees already made a final determination to award these benefits during their first consideration of the Krauts' 1989 appeal and that such a "reversal" by the Administrative Manager is violative of ERISA § 503, 29 U.S.C. § 1133, which they claim bars a fund administrator from reversing or modifying a final decision of a board of trustees.

This argument is without merit as the only issue considered at the 1989 appeal was the surgical coverage for preliminary orthodontics under the medical plan. In fact, in their joint final pre-trial report, it was an uncontested fact that "[t]he sole issue on appeal was the Krauts' claim that the necessary orthodontic work should be covered under the health plan." Joint Final Pre–Trial Report, at 7 (Agreed Statement of Uncontested Facts, No. 24). While it is true that the Trustees discussed coverage of surgical benefits during the appeal hearing, this does not suggest that they made a final determination regarding benefits the award of which was not appealed. It is clear that no final decision was made with regard to issues not appealed by the Krauts.

 Moreover, there is no factual basis for the Krauts to claim that their 1991 request for benefits was really a continuation of their 1989 request. As the defendant correctly points out, Lenora Kraut's surgery did not take place for more than two years following her initial request and orthodontics appeal, more than 21 months following the denial of that appeal, and approximately 43 days after her lawyer wrote a letter to the Fund stating that Lenora Kraut would not undergo the surgery pending the appeal. Br. of Appellee, at 21. In fact, the Krauts on October 29, 1991 informed the Fund that they would proceed with the surgery "without knowledge of whether the surgical or orthodontic work is covered." There thus was no detrimental reliance by the Krauts upon the 1989 letter from the Administrative Manager. Such reliance would not have been reasonable. In any event, we have held that estoppel principles cannot be applied under these circumstances to vary the written terms of the health care plan. *Pohl v. National Benefit Consultants,* 956 F.2d 126, 128 (7th Cir.1992) (ERISA preempts common law estoppel remedies and provides no remedies of its own where a nonfiduciary plan administrator misrepresents the scope of the coverage).

### B. *Right to Full and Fair Review*

 The Krauts also argue that they have been denied their right to a full and fair review under ERISA § 503, 29 U.S.C. § 1133. In his May 22, 1991 letter denying the benefits requested by the Krauts, the Administrative Manager articulated *two* primary reasons for the denial: (1) the plan exclusion for surgery to adjust dental occlusion; and (2) the plan exclusion for cosmetic or reconstructive surgery. The plaintiffs appealed this decision. When the Appeals Committee denied the appeal, it articulated *three* primary reasons for the denial: (1) the plan exclusion for surgery to adjust dental occlusion; (2) the plan exclusion for cosmetic or reconstructive surgery; and (3) the plan's TMJ exclusion. The Krauts contend that the Fund's consideration of and reliance upon the TMJ exclusion as a basis for denial of coverage was a blatant violation of ERISA § 503, 29 U.S.C. § 1133. In relevant part, that section states that a beneficiary must be provided with "the specific reasons for ... denial [of coverage]." The plaintiffs argue that because their claim was denied (at least in part) for a reason not advanced by the Administrative Manager in his initial determination of benefits, they were deprived of the opportunity to respond to the allegations that Lenora Kraut's surgery was being done to correct TMJ syndrome.

The plaintiffs did, however, respond to this allegation by submitting Dr. Litow's November 12, 1991 letter, which stated that the surgery was unrelated to TMJ because it was not physically performed in the articulation of the temporomandibular joint. As the district court found, the Appeals Committee properly rejected this distinction and focused instead on the purpose of the surgery. Moreover, the Administrative Manager did not have the necessary information at the

time of his initial review to determine that TMJ was definitely involved. The Krauts and Dr. Litow did not reveal that TMJ was definitely involved until the Krauts' attorney submitted certain supporting documents for their appeal on July 22, 1991, in which their doctors explicitly cited TMJ as the cause of Lenora Kraut's problems. Obviously, the Administrative Manager could not have identified the TMJ exclusion as an additional basis for the denial of benefits at the time that he made his initial determination.

In addition, nothing in ERISA § 503, 29 U.S.C. § 1133 explicitly precludes the Trustees from citing an exclusion not mentioned in an original letter of denial. Rather, that section requires "specific reasons for denial of a claim" and "full and fair review" by a named fiduciary. *See also* 29 C.F.R. ¶ 2560.-503–1(f)(1) and (h)(2). As noted above, the Krauts have been provided with specific reasons for the denial of their claim and have not been denied full and fair review of their case. Accordingly, we find that ERISA § 503, 29 U.S.C. § 1133 has not been violated.

### C. *Denial of Medical Coverage*

■ The Krauts also assert that the district court erred in upholding the Fund's denial of medical coverage. For review of the Trustees' denial of coverage under a health and welfare plan, we apply the arbitrary and capricious standard. *Reilly v. Blue Cross & Shield United of Wisconsin,* 846 F.2d 416 (7th Cir.1988). According to this standard,

> [a decision of a fiduciary] would be arbitrary and capricious if the [fiduciary] relied upon factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or is so implausible that it could not be ascribed to a difference in view or the product of [its] expertise.

*Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). We will thus proceed to review under this standard the three primary reasons articulated by the Appeals Committee for denial of coverage.

■ The plan in this case does not permit payment for "[a]ny expense or charge in connection with dental work or dental surgery ... including ... surgery or splinting to adjust dental occlusion...." *See* Ex. B (§ 4.11(11)). According to the Fund, this exclusion is very broad, disallowing any cost "in connection with" surgery to adjust dental occlusion. This exclusion focuses on the purpose—not the location—of the surgery. UL-LICO, the Fund's consultant regarding coverage of these surgeries, concluded that surgeries to correct orthognathic deformities are, in general, "in connection with" surgery to adjust dental occlusion and are therefore excluded from plan coverage. The plaintiffs challenge the reliability of this opinion because it is too general and conclusory. However, the Fund also relied upon the letters submitted by Dr. Litow, which stated that Lenora Kraut suffered from dental malocclusion, that realignment of her teeth was necessary, and that splinting by means of wiring, plates, and screws was part of the proposed surgery. Also, Dr. Benton, the family physician, agreed that her condition involved dental "malocclusion or in effect a misfit of the teeth, [and that] modification of the jaw may be necessary." Based on this evidence, the Appeals Committee was not arbitrary and capricious in determining that this exclusion supported a denial of Lenora Kraut's request.

■ The plan also states that benefits are not allowed for "[a]ny loss, expense or charge which results from ... reconstructive surgery...." *See* Ex. B (§ 4.11(10)). In his letters and deposition, Dr. Litow characterized Lenora Kraut's surgery as reconstructive. For example, in his July 5, 1991 letter, he stated that "Mrs. Kraut's deformity is developmental, and the surgery is considered reconstructive." The Krauts argue that because the purpose of the surgery was not cosmetic—that is, wholly for aesthetic purposes, it should be covered under the plan. However, the plan specifically excludes both reconstructive and cosmetic surgery. Therefore, even though the surgery may have had a functional purpose, it cannot be said that

the Appeals Committee made an arbitrary and capricious decision in denying coverage on this basis.

■ The plan further excludes "[a]ny expense or charge for treatment of craniomandibular or temporomandibular joint (TMJ) disorders...." Ex. B (§ 4.11(22)). At the time that the Appeals Committee made its determination, it had before it two diagnoses which both stated that Lenora Kraut's surgery aimed to correct TMJ dysfunction. Dr. Litow stated that "Ms. Kraut was originally seen by me ... for evaluation of her temporomandibular joint symptoms...." Dr. Benton stated that Lenora Kraut "was remarkably tender over both TMJ's and my diagnosis ... is that of temporomandibular joint syndrome." Although Dr. Litow's November 12, 1991 letter to the Fund explains that the surgery was "entirely unrelated to the temporomandibular joints" because it was performed "at least four inches from the temporomandibular joint", this distinction confuses the location with the purpose of the surgery. Moreover, in his deposition testimony, Dr. Litow admits that "one of the reasons that I was operating on her upper jaw was to correct the problems that she was having with her temporomandibular joints." We thus find that the Appeals Committee was not arbitrary and capricious in denying coverage because the surgery constituted treatment for TMJ.

Accordingly, we find that the district court did not err in finding that the Trustees were not arbitrary or capricious in denying Lenora Kraut's claim on its merits.

### III.

### CONCLUSION

For the reasons articulated above, the ruling of the district court is AFFIRMED.