Janet CARR, Plaintiff–Appellant,

v.

The GATES HEALTH CARE PLAN, Defendant–Appellee.

No. 99–1362.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1999.

Decided Oct. 21, 1999.

Christopher Henson (argued), Mustain, Linstrom & Henson, Galesburg, IL, for plaintiff-appellant.

Gary Nelson, Heyl, Royster, Voelker & Allen, Peoria, IL, Brian J. Spano (argued), Rothgerber, Johnson & Lyons, Denver, CO, for defendant-appellee.

Before BAUER, FLAUM, and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

Janet Carr was denied benefits under the Gates Health Care Plan ("the Plan"), an employee welfare benefit plan, because the treatment rendered related to a 1979 gastric stapling surgery, specifically excluded under the Plan. The Plan is sponsored by the Gates Corporation, and provides medical benefits, subject to certain limitations and exclusions, to eligible employees of the corporation and their dependants. The District Court held that the Health Care Benefits Review Committee ("the Committee") has sole discretion to interpret the Plan. After exhausting her administrative remedies, Carr initiated a suit under ERISA, 29 U.S.C. § 1132(a)(1)(B), in state court to recover benefits under an employee welfare plan. The Plan then removed the case to the United States District Court of the Central District of Illinois. On cross-motions for summary judgment, the district court determined that the Plan did not arbitrarily and capriciously deny Carr's claim, granted the Plan's motion for summary judg-

ment and denied Carr's motion. We affirm the district court's decision.

## I. Background

In 1979, Carr underwent a gastric stapling procedure, not covered by the Plan, for the purpose of weight loss. In 1992, she sought treatment to revise the procedure at the University of Iowa Hospitals and Clinics in Iowa City, Iowa. This treatment was specifically excluded from coverage under the terms of the Plan. Carr appealed and the Plan agreed to cover the procedure but told her that "any future surgery related to this specific condition could not be covered unless a benefit under the plan at that time."

In 1995, Carr suffered further complications from her 1979 surgery. Between June 21, 1995 and December 30, 1995 Carr underwent a series of surgeries to alleviate her condition. Carr submitted the bills for these surgeries to the Plan. After review of Carr's file, the Plan's Medical Director denied her claims under the Plan, which specifically excluded services and benefits for cosmetic or surgical procedures related to the enlargement, reduction, implantation or change in appearance of a portion of the body and gastric stapling or diversion for weight loss. Carr appealed this decision to the Committee, who retained independent physician specialist Dr. John Q. Gallagher. Carr submitted additional medical records and information for consideration by the specialist. Dr. Gallagher opined that the surgeries during June and December of 1995 were related to the original gastric surgery performed in 1979. After a final review, the Committee sent Carr a 10–page letter detailing its decision and reasoning for denying her claim. The Committee's decision was based on its policy to exclude conditions or problems directly or indirectly related to, or caused by, gastric stapling or weight-loss diversion procedures, even if the benefits and services are medically necessary.

Carr requested an additional review by the Committee. The Committee again reviewed her file and the transcript of the evidence deposition of her attending physician, Dr. Doherty. The Committee reaffirmed its decision that the treatment rendered was related to the gastric stapling procedure and therefore not covered under the Plan.

Carr then filed suit to have the Committees decision overturned.

## II. Analysis

 We review the district court's order granting summary judgment *de novo*. *Larsen v. City of Beloit*, 130 F.3d 1278, 1281 (7th Cir.1997). Where the plan gives the administrator discretion to interpret the plan terms or determine benefits eligibility courts review the denial of benefit claims under ERISA, 29 U.S.C. § 1132(a)(1)(B), using the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *Butler v. Encyclopedia Brittanica, Inc.*, 41 F.3d 285, 288 (7th Cir.1994). Under the arbitrary and capricious standard, the administrator's decision will only be overturned if it is "downright unreasonable." *Butler* at 291. A denial of benefits will not be set aside if the denial was based upon a reasonable interpretation of the plan documents. *Loyola Univ. of Chicago v. Humana Ins. Co.*, 996 F.2d 895, 898. If the administrator makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, then the administrator's decision is final. *Id.* (quoting *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 900 F.2d 1138, 1141 (7th Cir.1990)). Under the arbitrary and capricious standard, it is not our function to decide whether we would reach the same conclusion as the Plan or even rely on the same authority. *Cvelbar v. CBI Ill. Inc.*, 106 F.3d 1368, 1379 (7th Cir.1997). Instead, the court is only to determine if the decision was downright unreasonable. *Mers v. Marriott Int'l Group & Accidental*

*Death and Dismemberment Plan*, 144 F.3d 1014, 1021 (7th Cir.1998).

■ In this case, it is undisputed that the Committee is authorized, in its sole discretion, to interpret the Plan. This discretion empowers the Committee to construe disputed or ambiguous terms under the Plan, decide all questions of fact that may arise and determine the right of any member to a benefit, in accordance with the Plan. Under the Plan, such interpretations or determinations made by the Committee in good faith shall be conclusive and binding on all parties.

Carr argues that treatment for life-threatening complications of a non-covered act should be covered. In support of her argument she relies on dicta from *Fuller v. CBT Corp.*, 905 F.2d 1055, 1057 (7th Cir. 1990), which says that a complication incident to a non-covered procedure may be covered. The court in *Fuller*, however did not expand on this argument because the issue was not presented to the Court and therefore was waived. *Id.* Moreover, the *Fuller* court did not address the authority and the broad discretion of the plan administrator nor the scope of the plan at issue for us to comment. The court in *Fuller* did recognize the broad discretion of the plan administrator to interpret the plan and that the court will only overturn the decision if it was downright unreasonable. *Id.* at 1058.

In this case, the Committee was given the sole discretion to interpret disputed or ambiguous terms and therefore their decision can only be reviewed under the arbitrary and capricious standard. Only the Committee's interpretation was before the district court and it correctly held that the Committee acted reasonably.

■ Under the arbitrary and capricious standard we evaluate several factors: the impartiality of the decision making body, the complexity of the issues, the process afforded the parties, the extent to which the decision makers utilized the assistance of experts where necessary, and finally the soundness of the fiduciary's ratiocination. *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir.1995). Carr has admitted that the complications are due to the 1979 gastric stapling procedure. Her only claim is that the Committee's decision to deny benefits was arbitrary and capricious.

In 1992, Carr knew and acknowledged that the gastric stapling bypass procedure was not covered under the terms of the plan but sought coverage on an exception basis. The Committee approved the procedure but specifically stated in a letter dated August 10, 1992, "The Committee agrees to cover this proposed surgery for Janet this one time only. Any future surgery relating to this specific condition cannot be covered unless a benefit under the Plan at that time."

While Carr was undergoing treatment for complications, Carr received a letter, in August 1995, from committee member, Dr. John Morrison, denying coverage. Dr. Morrison denied coverage because the treatment relates to the original and subsequent gastric stapling procedures. The letter also informs Carr of her right to submit new information and have her claim reviewed. Dr. Morrison reviewed her medical file in December 1995 and again denied her claim. He advised Carr that she could appeal the decision to the Health Care Benefits Review Committee.

Carr requested an appeal in August 1996, at which time the Committee retained an independent physician, Dr. Gallagher to review her file before the Committee made a final decision. Carr was allowed to supplement her file. In a December 1996 letter to the Committee Dr. Gallagher stated that in his opinion the complications and treatment between June and December of 1995 were related to her original gastric stapling surgery performed in 1979. In April 1997, the Committee issued a detailed ten page decision to Carr setting forth its reasons for denying her claim. In May 1997, the Committee reviewed Carr's file along with addi-

tional information submitted by Carr and issued a final denial in June, 1997.

The Committee in this case conducted an exhaustive review of Carr's medical file. Its judgment was informed and supported by sound ratiocination. It examined all of the evidence in depth. Carr had several opportunities to submit additional information for review. The Committee brought in an outsider for independent analysis. He reached the same conclusion as the Committee; Carr's treatment was related to the original gastric stapling procedure.

■ Carr further argues that since the Plan is administered solely by agents and employees of Gates and her costs exceed $150,000.00 there is a conflict of interest. This circuit has already ruled that a conflict of interest such as this does not change the standard of review. *Chalmers*, 61 F.3d at 1344; *Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048 (7th Cir.1987). We presume that a fiduciary is acting neutrally unless a claimant shows by providing specific evidence of actual bias or a significant conflict of interest. *Mers v. Marriott International Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1020. See *Cuddington v. Northern Ind. Public Serv. Co.*, 33 F.3d 813, 816 (7th Cir.1994); *Van Boxel*, 836 F.2d at 1051, 1053. The *Chalmers* court stated that if the corporation's financial interests were a cause for concern, ERISA would take measures to prohibit corporate officers from serving as plan administrators. *Chalmers*, 61 F.3d at 1344. Carr offers no evidence of a significant conflict of interest or actual bias against her. As the district court stated, the plan is funded by both employee contributions and corporate funds and Carr's costs would be insufficient to undermine the administrators' impartiality. In this case, the Committee has more than satisfied the factors listed in *Chalmers*.

Carr argues further that there are two factual flaws with the Committee's interpretation of the Plan language. First she argues that the treatment rendered was for complications of a 1979 gastric stapling procedure, not the procedure itself. Second, she argues that the treatment was to save her life, not for weight loss. The Court does not dispute this. As the district court pointed out, the Committee did not deny her coverage on the grounds of medical necessity. The committee denied coverage because the treatment was directly related to the 1979 gastric stapling procedure which was for the purposes of weight loss or to reduce/reshape a portion of her body. The Committee interpreted their Plan to include complications related to the non-covered procedure itself. Specifically, the Plan states Exclusion and Limitations as:

> Exclusions. By way of example, but not of limitation, the following are specifically excluded services and benefits: ... 2. Cosmetic or surgical procedures ... [such as] any services performed in connection with the enlargement, reduction, implantation, or change in appearance of a portion of the body ... 19. gastric stapling or diversion from weight loss.

The Court can only review the Committee's interpretation of the Plan, not the Plan language under the arbitrary and capricious standard. *Loyola*, 996 F.2d at 898.

The court in *Kraut v. Wisconsin Laborers Health Fund*, 992 F.2d 113, 118 (7th Cir.1993), construed the phrase "in connection with" very broadly. The court focused on the purpose of the surgery not the location of it. *Id.* Carr argues that the purpose of the treatment was to save her life. However the purpose, when interpreting the Plan language, is connected with her 1979 surgery. Carr's treatment was for complications "connected with" or "related to" her 1979 gastric bypass surgery. Carr's condition was life-threatening because of the 1979 surgery, not independent of it.

The Court in *Loyola* upheld the denial of benefits because the treatment was "related to" an experimental heart transplant.

*Loyola*, 996 F.2d at 903. In *Loyola*, as in this case, it is irrelevant that the complications were life threatening. *Id.* The Court stated, "it seems callous for Humana to deny coverage for a lifesaving procedure and thereafter deny all subsequent hospital expenses ... Humana's humanity is not the issue here. This is a contract case and the language of the benefit plan controls." *Id.* The Court here is in the same position, the language of the Plan controls as does the Committee's ruling as long as it is reasonable. Here the Committee acted reasonably and their decision to deny coverage was not arbitrary and capricious.

## III. Conclusion

We believe that the decision of the Committee to deny Carr coverage for the treatment rendered between June and December of 1995 was based on a reasonable interpretation of the Plan's language. For the reasons set forth above, the district court's decision is affirmed.

RIPPLE, Circuit Judge, dissenting.

The question in this case is whether the Gates Health Care Plan ("the Plan"), by denying Ms. Carr medical benefits for surgeries related to an excluded gastric stapling, interpreted the Plan contrary to its plain language, thus acting arbitrarily and capriciously.

As the majority notes, the Plan vests the Gates Health Care Plan Review Committee ("the Committee") with discretion to administer the Plan. This provision requires a reviewing court to overturn the Committee's decision only if it is arbitrary and capricious. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1147 (7th Cir.1998). The court's review must be to determine if the Committee's interpretation of the Plan is unreasonable. *See Ross v. Indiana State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1009 (7th Cir.), *cert. denied*, — U.S. ——, 119 S.Ct. 1113, 143 L.Ed.2d 109 (1999).

An interpretation is unreasonable if it conflicts with the plain language of the Plan. *See, e.g., Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1109 (7th Cir.1998) ("It is well established that it is the language of an ERISA plan that controls."); *Dewitt v. Penn–Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir.1997) ("A plan administrator may have discretion when interpreting the terms of the plan; however, the interpretation may not controvert the plain language of the document."); *Canseco v. Construction Laborers Pension Trust*, 93 F.3d 600, 606 (9th Cir.1996) ("We have consistently explained that 'trustees abuse their discretion if they ... construe provisions of [a] plan in a way that clearly conflicts with the plain language of the plan.'" (quoting *Johnson v. Trustees of Western Conference of Teamsters Pension Trust Fund*, 879 F.2d 651, 654 (9th Cir.1989))), *cert. denied*, 520 U.S. 1118, 117 S.Ct. 1250 (1997); *O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir.1995) ("However, '[w]here the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious.'" (quoting *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 599 (2d Cir.1983))); *Loyola Univ. of Chicago v. Humana Ins. Co.*, 996 F.2d 895, 903 (7th Cir.1993) ("This is a contract case and the language of the benefit plan controls.").

### 1.

The majority opinion states that "the language of the Plan controls as does the Committee's ruling as long as it is reasonable." Slip op. at 297. I also believe the language of the Plan controls; I do not believe, however, that the Committee acted reasonably in interpreting the document contrary to its plain language. In my view, the majority pays far too little

attention to the pertinent language of the Plan.[1] Examination of the language must be the first step in determining whether the Committee's interpretation is unreasonable.

### 2.

"Because this is a matter of interpretation of an ERISA plan, we look to federal common law principles of contract interpretation to guide our inquiry." *Ross v. Indiana State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1011 (7th Cir.), *cert. denied*, — U.S. ——, 119 S.Ct. 1113, 143 L.Ed.2d 109 (1999). "It is a well-settled principle of contract construction that where a contract contains both general and specific provisions relating to the same subject, the specific provision controls." *Medcom Holding Co. v. Baxter Travenol Lab., Inc.*, 984 F.2d 223, 227 (7th Cir.1993). In the current case, two provisions of the Plan are relevant to the issue before us: (1) cosmetic or surgical procedures and (2) gastric stapling. These provisions state in pertinent part:

> [T]he following are specifically excluded services and benefits . . .
>
> 2. Cosmetic or surgical procedures [such as] any services performed in connection with the enlargement, reduction, implantation or change in appearance of a portion of the body. . . .
>
> 19. Gastric stapling or diversion for weight loss.

Because specific provisions control over general provisions, the gastric stapling exclusion applies here, not the cosmetic procedures exception. In examining the gastric stapling exclusion of the Plan, it is useful to contrast its language with the language of the cosmetic or surgical procedures exception. The cosmetic procedures exception extends to include "any services performed in connection with the enlargement, reduction, implantation, or change in

appearance of a portion of the body." Notably, similar descriptive language does not follow the gastric stapling exclusion. The presence of such language in the cosmetic procedures exception, compared with the absence of such language in the gastric stapling exclusion, suggests strongly "gastric stapling" was not intended to include anything beyond the actual gastric stapling.

The majority opinion argues that the phrase "in connection with" should be read broadly, such that complications of the gastric stapling fall into the exclusions category. Although the majority's interpretation of *Kraut v. Wisconsin Laborers Health Fund*, 992 F.2d 113, 118 (7th Cir. 1993) is accurate, and the phrase "in connection with" should be read broadly, two flaws exist in its application of *Kraut* to Ms. Carr. First, the "in connection with" language is found in the cosmetic procedures exclusion. To lift the phrase from that exclusion, and apply it in the gastric stapling exclusion, is inconsistent with the plain language of the Plan. Seventeen exclusions are listed between cosmetic procedures and gastric stapling; to carry that phrase down to gastric stapling is not a natural reading of the plain language. Second, this circuit in *Fuller v. CBT Corp.*, 905 F.2d 1055, 1057 (7th Cir.1990) recognized, in dicta, that complications of uncovered procedures should be covered. Ms. Carr admits her gastric stapling in 1979 should have been excluded from coverage. Her 1995 surgeries, however, were designed to remedy *complications* of gastric stapling, not gastric stapling. These procedures are entirely separate from her original surgery. Therefore, even though the Committee properly excluded the initial gastric stapling, her complications from the excluded gastric stapling should be covered.

---

1. The majority opinion states in part: "The Committee interpreted their Plan to include complications related to the non-covered procedure itself. . . . The Court can only review the Committee's interpretation of the Plan, not the Plan language under the arbitrary and capricious standard." Slip op. at 296.

The majority concludes that it "can only review the Committee's interpretation of the Plan, not the Plan language under the arbitrary and capricious standard." Slip op. at 296. However, by ignoring the unambiguous, plain language of the Plan, the Committee interpreted the document contrary to its plain language and therefore acted unreasonably. Accordingly, I respectfully dissent.