Carla A. HOWE, Individually and as Personal Representative of the Estate of Robert Charles Howe, Deceased, Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY, Defendant.

No. 99 C 4960.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 28, 2000.

*MEMORANDUM OPINION AND ORDER*

SHADUR, Senior District Judge.

Carla Howe ("Carla"), both individually and as personal representative of the estate of her late husband Robert Charles Howe ("Robert"), has sued Zurich American Insurance Company ("Zurich")[1] to re-

---

1. Zurich is one of a host of related companies with confusingly similar names, the main source of confusion stemming from the fact that "Zurich" appears in each corporate name. Although Carla understandably targeted several of the corporations in her original Complaint, the consequence of a clarifying defense motion and supporting affidavit has been to identify the right tree in the Zurich forest—on February 18, 2000 this Court granted the motion for dismissal of all of the other corporate defendants without objection from Carla.

cover death benefits under a policy issued by Zurich to implement the Flexible Benefit Plan ("Plan") adopted by Zurich for its employees. Zurich has moved for summary judgment under Fed.R.Civ.P. ("Rule") 56, the parties have complied with the requirements of Rule 56 and this District Court's related LR 56.1 and the motion is ripe for decision. For the reasons stated here with comparative brevity, the motion is granted and this action is dismissed.

### Facts

Robert had been employed by Zurich since 1987 as a risk engineer (an ironic title given the manner of his April 23, 1997 death), and at the time of his death his job title was Chief Risk Engineer. Robert's death came from a crash that occurred while he was a pilot operating a hang glider for recreational purposes.

In relevant part the policy at issue ("Policy," Zurich's No. GTU–83–32–370) set out this among other coverage exclusions:

> Coverage Excluded. We do not pay any claim that is caused by, contributed to, or results from:
>
> \* \* \* \* \* \*
>
> h. Travel or flight in any aircraft[2] except to extent stated in the "Description of Hazards."

And that "Description of Hazards" (reproduced in Ex. 1 to this opinion) expressly included any injury that an insured sustains while a *passenger* in certain specified aircraft, and it then went on to specify this express exclusion:

> Insurance is not provided:
>
> If the covered person is the pilot, operator, member of the crew, or cabin attendant of the aircraft.

After its review of Carla's claim, Zurich as the designated Plan Administrator—ultimately through reaffirmance by its ERISA review committee—rejected the claim on the ground that a hang glider *is* an "aircraft" within the scope of that exclusion. That determination was made by Zurich pursuant to the authority granted by Plan § 5.2(d):

> The Plan Administrator shall have the sole responsibility for the administration of the Plan subject to duties that it has delegated to third parties. Except as herein expressly provided, the Plan Administrator shall have the exclusive right to: interpret the provisions of the Plan, determine any questions arising hereunder or in connection with the administration of the Plan (including the remedying of any omission, inconsistency or ambiguity). The Plan Administrator's decision or action in respect thereof shall be conclusive and binding upon any and all Participants, Dependents, or former Participants.

### Relevant Standards and their Application

Although Rule 56 requires that the facts be viewed from the nonmovant's perspective, taken with the benefit of all reasonable inferences, that provides no solace for nonmovant Carla here. There is after all no factual dispute in this case—instead the question is one of law.

On that score our Court of Appeals has consistently read the seminal decision in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) as teaching that where, as in this case, such broad discretion as is expressed in Plan § 5.2(d) is granted to a plan administrator, judicial intervention is appropriate only where the decision is arbitrary and capricious (see, e.g., the recent case cited in Carla's own response to Zurich's motion, *Carr v. Gates Health Care Plan,* 195 F.3d 292, 294 (7th Cir.1999)). It would be difficult to draft a plainer vesting of such discretion than the one quoted from Plan 5.2(d).[3] And although our Court of

---

**2.** [Footnote by this Court] "Aircraft" is not defined in this or any of the other provisions of the Policy.

**3.** It certainly is not vulnerable to the concern just addressed by our Court of Appeals in *Herzberger v. Standard Ins. Co.,* 205 F.3d 327 (7th Cir.2000) as to the standard for reviewing far different plan language.

Appeals has on occasion used even more colorful language to characterize the limitation placed on judicial scrutiny of plan administrator determinations under such circumstances, it suffices to list "downright unreasonable" (*Carr*, 195 F.3d at 294) or "completely unreasonable" (*Mers v. Marriott Int'l Group & Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1021 (7th Cir.1998)) as typical statements that define the highly limited scope of review..

As stated in n. 2, "aircraft" is not defined in the Policy, and that word might perhaps be arguably susceptible of more than one reading in the context of a non-powered means of air travel such a glider or hang glider. But that is not really the issue—rather the question is whether Zurich was "arbitrary and capricious" or "downright unreasonable" or "completely unreasonable" in *its* reading of the term to include a hang glider. And given the existence of such decisions as *Totten v. New York Life Ins. Co.*, 298 Ore. 765, 772, 696 P.2d 1082, 1087 (1985) and *Fielder v. Farmers New World Life Ins. Co.*, 435 F.Supp. 912, 914 (C.D.Cal.1977),[4] and the breadth of the definition of "aircraft" in such sources as *Webster's Third New Int'l Dictionary* at 46 (1986)—all of them reading "aircraft" broadly enough to embrace a hang glider—that question *must* be answered in the negative.

Just two other points bear brief discussion. For one, there is no basis for applying a different standard of review or reaching a different conclusion on any premise that Zurich is somehow involved in an inappropriate conflict of interest (see *Carr*, 195 F.3d at 296 and the numerous cases cited there). Second, Carla is availed nothing by the fact that back in 1989 (some years before issuance of the Policy) a Zurich employee responded to Robert's question whether "any of the insurance plans available through Zurich" contained any "exclusions for high-risk sports" by stating that the then-available accidental death and dismemberment policy did not cover "injuries or loss of life caused by or resulting from piloting an airplane." Nothing has been offered up by Carla to support any asserted reliance by Robert on the use of the word "airplane" rather than "aircraft" in that extremely brief note, even apart from the question whether any such reliance—even if it had been shown—would have been reasonable under all the circumstances.

*Conclusion*

There is no genuine issue of fact, and Zurich is entitled to a judgment as a matter of law. This action is dismissed.

### Exhibit 1

**The hazards insured against by this policy are:**

Injury sustained by a Covered Person anywhere in the world. This includes injury sustained while the Covered Person is a passenger, riding in or on; boarding; or getting off:

A. any civilian aircraft with a current and valid standard category airworthiness certificate (if it is not owned, leased or operated by the Policyholder). The aircraft must be operated by a pilot with current and valid:

  1. Medical certificate; and

  2. Pilot certificate with proper rating to pilot such aircraft.

B. any transport type aircraft operated by the Military Airlift Command (MAC) of the United States. This includes similar air transport service run by any government agency.

### Additional Exclusions

**Insurance is not provided:**

If the Covered Person is the pilot, operator, member of the crew, or cabin attendant of the aircraft.

For any loss caused by, contributed to or resulting from injury sustained in or on, boarding, or getting off:

---

**4.** Also cf. *Fireman's Fund Am. Life Ins. Co. v. Long,* 148 Ga.App. 216, 251 S.E.2d 133

(1978).

**1014**

1. any aircraft being used for or in connection with aerial photography;

2. any aircraft being used for tests or experimental purposes;

3. any aircraft that requires a special permit or waiver from the agency that has jurisdiction over civil aviation, even if granted;

4. any aircraft used or under lease and operated by the Policyholder or a Covered Person. This includes operation by their employees or members of their household.