**Dan GINGOLD, Plaintiff–Appellant,**

**v.**

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant– Appellee.**

No. 02–3980.

United States Court of Appeals, Seventh Circuit.

Argued July 8, 2003.

Decided Aug. 25, 2003.

Arthur L. Klein, Arnstein & Lehr, Chicago, IL, for Plaintiff–Appellant.

Steven R. McMannon, Chicago, IL, for Defendant–Appellee.

Before BAUER, KANNE, and WILLIAMS, Circuit Judges.

## ORDER

Dan Gingold filed a complaint against Unum Life Insurance Company of America to recover disability benefits allegedly due under an employee benefit plan governed by the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). The district court found that Unum's denial of Gingold's request for benefits was not arbitrary and capricious and granted Unum's motion for summary judgment. Gingold now appeals, arguing that the district court's decision was incompatible with the unambiguous language of the benefit plan. We affirm.

Gingold and Unum dispute the definition of "monthly earnings" used to calculate his benefits under a Group Long Term Disability Insurance Policy issued by Unum to Gingold's employer, Accurate Die and Stamping, Inc. Until the onset of his disability, Gingold was Accurate's CEO and principal owner. In addition, he owned the building in which Accurate was housed and collected rent from Accurate. Gingold's total annual income was $115,000. For tax planning purposes, he characterized $84,000 of this amount as salary and $31,000 as rental income from Accurate for use of his property. According to Gingold, his monthly earnings for the purpose of calculating his disability benefits should include not only his salary as CEO of Accurate but also the rental income he received as Accurate's landlord. But when Gingold filed his claim for benefits, Unum excluded this rental income from its computation of Gingold's monthly earnings.

Accurate purchased a long-term group disability policy from Unum in 1994. The policy provided that a qualified employee who became disabled would receive 66 2/3 % of his or her "monthly earnings," up to a maximum benefit of $10,000 a month. The policy defines "monthly earnings" as:

> Your monthly earnings means your gross monthly income from your Employer in effect just prior to your date of disability. It includes your total income before taxes, but does not include deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

When Accurate applied for the policy, it submitted two different figures for Gingold's income. On an application form provided by Unum, Accurate listed $115,000 for Gingold in a column entitled "Basic Monthly Earnings." A note at the bottom of the form directs the applicant to list in this column the amount of income to be covered by the policy. Accurate also provided in a second document a census of all its employees' salaries. This form listed Gingold's annual salary as $84,000. Unum computed and collected Gingold's premium payments based on the $115,000 figure.

In June 1999 Gingold injured his back and filed a claim with Unum for disability benefits. Unum approved Gingold's claim but used $84,000, not $115,000, as the baseline and awarded him benefits totaling 66 2/3% of $6300 (his monthly salary of $7000 minus his monthly 401(k) contribu-

tion). Gingold contested Unum's figures, pointing out that he had been paying premiums for five years based on monthly earnings of $9583, the monthly total of his salary and rental income. Unum reviewed its calculation of Gingold's monthly earnings and sent the claim to a certified public accountant for further analysis. Based on its review and the CPA's findings, Unum concluded that "monthly earnings" as defined in the policy did not include rental payments and that its original calculation of Gingold's benefits was correct. Unum advised Gingold that it would refund his premium payments to the extent that they had been based on the rental income. Gingold appealed Unum's decision, and his claim was forwarded to Unum's Quality Review Section, which upheld the exclusion of the rental payments from Gingold's monthly earnings. Gingold requested additional review of his claim; Unum conducted a second appellate review and upheld the previous appellate determination.

Having exhausted his administrative remedies, Gingold sued Unum under ERISA to recover the additional benefits. Observing that the policy granted the plan administrator discretion to interpret the terms of the plan, the district court reviewed Unum's denial of additional benefits under the arbitrary and capricious standard. The court concluded that the policy's definition of "monthly earnings" was susceptible to more than one interpretation but that Unum's interpretation was reasonable. Thus the court found that it was within Unum's discretion to exclude the rental income from its computation of Gingold's monthly earnings.

■ We review a grant of summary judgment *de novo* and generally examine the record and the law under the same standard used by the district court. *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1107 (7th Cir.1998). Because the ERISA plan at issue here included unambiguous language granting the plan administrator the discretion to construe the terms of the policy, the district court correctly reviewed the denial of Gingold's request for additional disability benefits using the deferential arbitrary-and-capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir.2000), and we do the same.

A plan administrator's decision survives the arbitrary and capricious standard as long as the administrator considers relevant factors in its analysis and can offer a reasoned explanation for the denial of benefits based on the evidence and plan documents. *Hess v. Hartford Life & Accident Ins.*, 274 F.3d 456, 461 (7th Cir.2001). When a plan term is open to more than one interpretation, we will not find the administrator's decision arbitrary and capricious just because we would have reached a different conclusion or relied upon different authority had we been in the administrator's shoes. *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir.1999). The general contract principle that ambiguous terms are construed in favor of an insured is not applicable when an ERISA plan explicitly grants the administrator such broad discretion. *Ross v. Indiana State Teacher's Assoc.*, 159 F.3d 1001, 1011 (7th Cir.1998). Thus, we will reverse only if we conclude that the administrator's interpretation was "downright unreasonable." *Carr*, 195 F.3d at 294.

Gingold argues that Unum's interpretation of "monthly earnings" controverts the plain language of the policy and is thus arbitrary and capricious. But the plan gives Unum "discretionary authority ... to interpret the terms and provisions of the policy." As used in the policy, "monthly earnings" is an ambiguous term, subject

to reasonable alternative interpretations. *See Anstett v. Eagle–Picher Ind.*, 203 F.3d 501, 503 (7th Cir.2000). Thus, under the arbitrary and capricious standard, Unum's definition, not Gingold's, controls as long as it is reasonable. *Carr*, 195 F.3d at 294.

■ Gingold argues that the rental income was part of his "monthly earnings" because the policy defines "monthly earnings" as "your gross monthly income from your Employer," and he received the rent directly from Accurate, his employer. Thus, Gingold contends, Unum's exclusion of the rental income contradicts the plain meaning of the plan. Gingold points out that the plan does not expressly exclude rental income from its definition of "monthly earnings." But the policy *does* exclude "any other extra compensation." The policy does not place specific limits on what constitutes "any other extra compensation," and Unum's conclusion that rental income qualifies as "extra compensation" and is thus excluded from "monthly earnings" was not unreasonable. And, arguably, the policy may have excluded rental payments as "income received from other sources than your Employer." Although Accurate employed Gingold and also paid him rent, it was acting as Gingold's tenant, not his employer, when it made the payments.

Under the arbitrary and capricious standard the question is not whether Gingold's interpretation of "monthly earnings" is possible or even correct, but whether Unum's interpretation is unreasonable—in other words whether Unum's interpretation contravenes the plain meaning or structure of the policy or defies common sense. *Hess*, 274 F.3d at 461. In the context of the plan's language, Unum's interpretation of the term "monthly earnings" was reasonable. The plan excludes from monthly earnings forms of payment given over and above an employee's base

salary—commissions, bonuses, and overtime pay; it was not "downright unreasonable," *Carr*, 195 F.3d at 294, for Unum to infer that the intent of the plan was to limit "monthly earnings" to salary.

But we are not at the end of our analysis—this case is complicated by the fact that Unum included Gingold's rental income when it calculated and collected his premiums. Gingold argues that Unum is estopped from excluding the rent from his monthly earnings because Unum fixed his premiums based on his annual income of $115,000 even though he disclosed that his annual salary was only $84,000. Gingold did provide Unum with both figures, and, apparently, Unum never noticed or addressed the discrepancy until it was time to pay out benefits to Gingold. And when Gingold submitted his claim, the policy had been in force for five years—presumably sufficient time to detect and correct an error. Arguably, Unum's collection of the higher premiums could be construed as an acknowledgment that Gingold's "monthly earnings" included the rental income. Thus we must ask whether it was unreasonable for Unum to deny the additional benefits based on its more restrictive definition of "monthly earnings" when Unum's own behavior was consistent with Gingold's definition.

To establish an estoppel claim in the context of ERISA, a plaintiff must show that the plan administrator made a knowing misrepresentation in writing and that he suffered economic detriment because of his reasonable reliance on that misrepresentation. *Bock v. Computer Assocs.*, 257 F.3d 700, 711 (7th Cir.2001). Unum maintains that it made a clerical error, not a knowing misrepresentation, when it overcharged Gingold, and Gingold has no writing or any other evidence to suggest otherwise. Furthermore, Gingold cannot establish that he relied to his economic

detriment on his belief that he was covered for the full $115,000, because he has not shown that he acted any differently that he would have if he had known he was covered for only $84,000.

Gingold asserts that he characterized the additional income as rent for tax planning purposes only, and he might have recharacterized the rent as salary had he known that it would be excluded. Had Gingold been covered for his full annual income, including the amount he collected as rent, he would be receiving an additional $1723 in benefits per month. But presumably Gingold has already reaped an economic benefit in the form of tax savings as a result of characterizing a portion of his income as rent. He would not have enjoyed those savings had he characterized the rental payments as salary, and, even if Gingold had known at the time of his application that his tax strategy might decrease his benefits, it is not certain that he would have chosen to forego the tax savings so that he could be assured larger monthly payments in the event he became disabled.

Moreover, Gingold's disability did not preclude him from obtaining economic benefit from the property he rented to Accurate. We see no reason why Gingold could not continue receiving rental payments even though he could not work. Gingold claims that his disability forced him to sell the property, thus eliminating his rental income, but Gingold received the proceeds from the sale.

Finally, we note that, no matter what amount Gingold paid in premiums, the policy did not promise him a fixed amount of benefits. As is typical of long-term disability insurance plans, the policy specifies that monthly payments will be based upon a claimant's monthly earnings "just prior to the date of disability." According to Unum, it is not uncommon for an employee's earnings to change between the time he applies for coverage and the time he submits a claim for benefits. Unum also asserts that it is standard practice is to adjust premiums when such changes come to an insurer's attention. Because the crucial moment for calculation of benefits is the time of claim not the time of application, a covered employee cannot rely upon the initial amount of his premium as a guarantee that he will receive a particular amount of benefits should he become disabled.

We are troubled by Unum's carelessness in processing the information it received from Gingold at the time he applied for disability insurance. Nonetheless, Gingold has not established that he suffered a detriment as a result of that carelessness. Unum's denial of Gingold's claim for additional benefits was neither arbitrary nor capricious. Accordingly, we AFFIRM the judgment of the district court.