MANION, Circuit Judge,
dissenting.
Cathleen Kennedy challenges her plan administrator’s decision to terminate her benefits under an ERISA disability plan. Under the plan, Kennedy is entitled to benefits if she is unable to perform “any occupation consistent with [her] education, training, and experience” because of illness or injury treated by a physician. The plan contains discretionary language, meaning we can overturn the administrator’s decision only if it was arbitrary and capricious. Mote v. Aetna Life Ins. Co., 502 F.3d 601, 606 (7th Cir. 2007). Nevertheless, the court sets it aside. Because I conclude that the administrator’s decision was within the bounds of reasonableness, I would sustain it. Therefore, I respectfully dissent.
Where ERISA disability plans contain language granting the plan administrator discretionary authority, our power to set aside the administrator’s decision is substantially limited. We may “overturn the administrator’s decision only where there is an absence of reasoning to support it.” Jackman Financial Corp. v. Humana Ins. Co., 641 F.3d 860, 864 (7th Cir. 2011). We are not to substitute our judgment for that of the administrator so long as the administrator has made “an informed judgment and articulate[d] an explanation for it that is satisfactory in light of the relevant facts.” Herman v. Cent. States, Se. & Sw. Areas Pension Fund, 423 F.3d 684, 692 (7th Cir. 2005) (quoting Carr v. Gates Health Care Plan, 195 F.3d 292, 294 (7th Cir. 1999)). In other words, the decision must stand unless it is “downright unreasonable.” Id. (quoting Carr, 195 F.3d at 294). This is not a rubber stamp, but it is quite deferential. See id. at 693.
The administrator’s decision in this case contains sufficient evidence to sustain it under that standard. With respect to limitations caused by fibromyalgia (the main dispute here), the administrator relied on reports from Drs. Neucks and Condit, both of whom were Kennedy’s treating rheuma-tologist at one point, as well as a record review by Dr. Payne. In 2010, Dr. Neucks concluded that Kennedy had “average fi-bromyalgia,” with relatively high functioning and normal movement. He said that Kennedy could work a lower-stress job for about 30 hours per week with some limitations, but that her condition did not preclude the performance of any job. In 2012, once Dr. Neucks had replaced Dr. Condit as treating rheumatologist, he indicated once again that Kennedy could not perform her old job because of its high stress and cognitive demands. In 2013, he opined that Kennedy could not work a regular schedule or perform high-stress activities. He never stated that Kennedy was totally disabled from doing any work.[1]
*1141 After a record review, Dr. Payne concluded that Kennedy’s medical records did not support restrictions or limitations on activities. The court says that Dr. Payne erred by requiring laboratory data to confirm Kennedy’s diagnosis of fibromyalgia, but that’s not quite right. He acknowledged the diagnosis, but his relevant conclusion was about Kennedy’s functional limitations. While the amount of pain someone experiences is entirely subjective, “how much an individual’s degree of pain or fatigue limits [her] functional abilities can be objectively measured.” Williams v. Aetna Life Ins. Co., 509 F.3d 317, 322 (7th Cir. 2007); see also Boardman v. Prudential Ins. Co. of Am., 337 F.3d 9, 17 n.5 (1st Cir. 2003) (“While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis.”). Social Security administrative law judges make these determinations every day in cases where claimants report pain but can still do some work. In short, it was not improper for the administrator to rely on Dr. Payne’s conclusion that Kennedy’s medical records did not support functional limitations, irrespective of the diagnosis of fibromyalgia.
There was also other evidence apart from the doctors that indicated Kennedy could work in some occupations. She self-reported in a questionnaire to Anthem that she exercised often (and Dr. Neucks reported in 2010 that Kennedy could jog three miles). And, speaking of Social Security, that Administration found that Kennedy was not disabled under a similar standard to “any occupation” on February 13, 2012. We have upheld an administrator’s decision to deny benefits in several cases despite a contrary Social Security decision, so the administrator in this case should have been entitled to rely in part on a negative Social Security finding. See, e.g., Mote, 502 F.3d at 610; Black v. Long Term Disability Ins., 582 F.3d 738, 748 (7th Cir. 2009). That is especially true when the Social Security decision bolsters other competent evidence on the record.[2]
Nobody disputes that Kennedy has fi-bromyalgia. Yet, most people with fibro-myalgia can work. Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914, 916 (7th Cir. 2003). I cannot agree that the administrator’s determination that Kennedy is one of those still able to work was arbitrary and capricious. “Although others reviewing [Kennedy’s] medical condition in the first instance may reasonably conclude that she is disabled ... our standard of review in this matter is deferential, and we [should not] say that [the administrator’s] determination was unreasonable.” Black, 582 F.3d at 748. The *1142 record contains sufficient evidence to uphold the decision. Therefore, I would reverse the judgment of the district court.
I respectfully dissent.

. The court thinks that the “any occupation” standard is too harsh. It finds unfair that Kennedy might have to take a part-time position or a job below her pay grade and forego disability benefits (which she, quite rationally, probably doesn’t want to do given the significant sum she receives in benefits each month). But it’s not our place to rewrite the language of the plan, and the administrator has discretion to interpret it.
Moreover, the court faults the administrator for its failure to indicate which jobs Kennedy could do with her restrictions. Of course, the *1141 administrator did say that she could potentially do “various non-executive positions in compensation, benefits, and other human resources fields.” The court says this is both vague and inconsistent with the medical evidence. However, as I explain throughout the dissent, the conclusion that Kennedy could perform in a lower-stress position (with some accommodations for flare-ups) is a reasonable interpretation of the evidence.

. The court also references the administrator’s conflict of interest. We have held that conflicts of interest for self-funded ERISA plans “may act as a tiebreaker in finding that the determination was arbitrary and capricious” depending on the circumstances of the case. Black, 582 F.3d at 748 (citing Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 118, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)). But in Black, we rejected the employee's argument that a conflict of interest required the administrator to give more weight to a positive Social Security determination. Id. Here, we have a negative Social Security finding and other evidence by which the administrator could have rationally found that Kennedy is not disabled. The self-funded nature of the plan does not override that deferential standard of review.