**Koula POULOS, Plaintiff,**

v.

**MOTOROLA LONG TERM DISABILITY PLAN,
Defendant.**

**No. 99 C 965.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 21, 2000.

Mark D. DeBofsky, DeBofsky & DeBof-sky, Chicago, IL, for Plaintiff.

Gregory M. Davis, Seyfarth Shaw Fairweather & Geraldson, Chicago, IL, John T. Murray, Seyfarth Shaw Fairweather & Geraldson, Atlanta, GA, for Defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Koula Poulos was 59 years old in 1998 when Motorola cut off her Long Term Disability Plan benefits after thirteen years, determining, despite her being diagnosed with, among other things, degenerative arthritis, osteoporosis, and depression, that she was not disabled. She appeals this determination of the Plan administrator, and I reverse it, ordering her benefits reinstated.

## I.

Ms. Poulos was born in Greece in 1940. She came to this country in 1962, and speaks little English. She did manual labor for most of her working life, most recently, during 1983–85, as an assembly line worker for Motorola. She was injured in 1985 and received benefits under the Motorola Long Term Disability Plan ("the Plan") from 1985 to 1998. She also qualified upon appeal for Social Security Disability payments ("SSI") in 1989 after initially being rejected for those benefits. The basis of her disability claims was that she suffered a spinal impairment that caused her severe back pain and limited her ability to move and work. This was attested to by Dr. Spiro Stamelos, her primary care physician, who has treated her over the last decade. He stated that she suffered from severe osteoporosis (bone weakening), pathological fractures, arthritis, weakness, and clinical depression. He also noted that, at age 59, "we have very little chance of re-educating and possibly reversing her process."

In 1998, Motorola terminated her disability benefits because it concluded that she was not disabled. Motorola's decision was based upon the determination of CORE, a medical review agency it had recently engaged in part to assess disability claims. CORE's Medical Director, Dr. J.D. Beavers, did not examine Ms. Poulos in person, but looked at Dr. Stamelos' reports in her case file. Dr. Beavers decided that Ms. Poulos was not disabled because Dr. Stamelos reported that she could (1) lift up to 10 pounds frequently and 10–25 pounds occasionally; (2) repetitively perform fine finger movements, (3) reach above her shoulders and move her head around, (4) sit for up to two hours, stand for up to one hour, and walk for up to one hour. Motorola informed Ms. Poulos of the decision to deny further benefits by phone and in writing.

She appealed, and Motorola forwarded her file to an orthopedic physician, Dr. Frank Nisenfeld, who also did not examine her personally, but concluded from her file that her limitations as described by Dr. Stamelos were not consistent with total disability from any job. Dr. Stamelos ordered a nuclear medicine bone scan, which came back with "no significant abnormalities," but noted some degenerative changes in the extremities, although remarking that her condition had not essentially changed since 1991.

Ms. Poulos appealed again, and Motorola arranged for an actual in-person examination by Dr. Slodoban Vucicevic, an orthopedic surgeon, who concluded that "[t]his patient presents severe limitation as far as her ability to go back to working regular duties." Dr. Vucicevic said that she was capable of performing light duty in sitting and standing positions and might be able to do sedentary work. He noted degenerative arthritic changes, osteoporosis, complete inability to squat and reduced ability to stoop. He stated that she was an "interesting" patient. Subsequently, in deposition testimony, Dr. Vucicevic explained that he thought Ms. Poulos might be "to some degree" improved, and stated that "whether she can be retrained remains to be seen, and . . . that doing some clerical work is feasible. . . ." He said that a "trial" or attempt to place her in some appropriate job rather than a specific release to return to a particular occupation "would be a reasonable way to look at it to see what she can and cannot do and go from there."

After Dr. Vucicevic's report, Motorola again denied Ms. Poulos' appeal. She asked for reconsideration, including with this request a report by Susan Entenberg, a certified rehabilitation counselor, stating that in view of Ms. Poulos' physical condition, age, lack of work history or English language skills, Ms. Poulos "is unable to perform any jobs at the sedentary level, sedentary with sit/stand options or light level." Motorola did not respond, and Ms. Poulos filed this lawsuit. Both parties now move for summary judgment. They agree that the relevant evidence is in and that

there is nothing for a jury to try. Each party thinks the evidence in the record supports judgment as a matter of law in its favor.

## II.

█ The first issue is the standard of review. The Plan is an employee welfare benefit plan as defined in ERISA. 29 U.S.C. § 1002(1). Plenary or de novo review is presumed, *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir.2000), but where the plan gives the administrator discretion to interpret the plan terms or determine benefits eligibility, courts review the denial of benefit claims using the "arbitrary and capricious" standard. *Carr v. The Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir.1999); *see Firestone Tire and Rubber v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the administrator makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, then the administrator's decision is final. *Loyola Univ. of Chicago v. Humana Ins. Co.*, 996 F.2d 895, 898 (7th Cir. 1993). Under the arbitrary and capricious standard, I do not decide whether I would reach the same conclusion as the Plan administrator, *Mers v. Marriott International Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1021 (7th Cir.1998). Instead, I am only to determine if the decision was downright unreasonable. *Id.*

█ The Plan at issue here gives Motorola's Administrative Committee the "express authority" to "construe and interpret the Plan, decide all questions of fact and questions of eligibility, and determine the amount, manner and time of payment of any benefits hereunder, all in the sole discretion of such decisionmaker." Section (8)(2)(b). This is equivalent to language found to grant discretion in *Carr*, 195 F.3d at 295, and similar to the "safe harbor" language the Seventh Circuit says will provide for arbitrary and capricious review in *Herzberger*, 205 F.3d 327, 330 ("Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them.").

█ Ms. Poulos argues against the use of the discretionary standard on the grounds that Motorola acted as her "adversary," first because it initially terminated her benefits without an in-person examination and rejected the views of her treating doctor. However, on appeal she received several in-person examinations, and Motorola's rejection of Dr. Stamelos' conclusions does not show that it is so adverse to her as to forfeit deferential review.

## III.

The question before me, then, is whether the Committee was "downright unreasonable" to conclude that Ms. Poulos is not "disabled" under the Plan. The Plan language says that she is disabled if her condition renders her unable "to perform all of the normal duties of any occupation or employment for wage or profit for which [she] is reasonably qualified by education, training or experience." Section 2.5(b).

█ Motorola argues that four of the five doctors who reviewed her case and two of the three who actually examined her found that she was not disabled. This is not wholly accurate—the radiologist who did the bone scan made no such determination—and is, moreover, somewhat misleading. Two of the doctors who reviewed her case, Drs. Beavers and Nisenfeld, did not examine her, and made their determinations only from her file. "A number of decisions greatly discount the report of a nonexamining physician in favor of the report of the claimant's own physician," *DeFrancesco v. Bowen*, 867 F.2d 1040, 1043 (7th Cir.1989) (Social Security context) (citing cases). While "a patient's regular physician may be biased in favor of the patient and may also fail to appreciate how his patient's case compares to others," *Micus v. Bowen*, 979 F.2d 602, 608 (7th Cir.

1992), still, "there is no presumption of bias in a treating physician's disability opinion." *Edwards v. Sullivan,* 985 F.2d 334, 337 (7th Cir.1993). I do not wholly discount the nonexamining physician's conclusions, but they are less weighty than the reports of the examining physicians.[1]

I need not decide whether it would have been unreasonable to cut off Ms. Poulos' benefits on the basis of the opinions of nonexamining physicians, however, because Motorola seems to have rested its final decision mainly, if not wholly, on the opinion of Dr. Vucicevic, who did in fact examine her. Dr. Vucicevic's medical opinion, as opposed to his disability evaluation, is substantially in agreement with that of Dr. Stamelos. Dr. Vucicevic's letter of August 14, 1998, reports that Ms. Poulos had "degenerative arthritic changes with some spondylosis of the spine," osteoporosis, and was unable to stoop or fully squat, as well as "some signs of depression." She can lift, "but no more than 15–20 pounds infrequently." The main medical disagreement Dr. Vucicevic had with Dr. Stamelos seems to be whether Ms. Poulos shows any possibility of improvement, which Dr. Vucicevic indicated some hope for in his deposition testimony. Dr. Vucicevic, of course, while agreeing that Ms. Poulos "presents severe limitation as far as her ability to go back to work," controverts Dr. Stamelos' conclusion that Ms. Poulos is totally disabled.

However, the medical facts are relevant to, but not dispositive of, the disability determination. In the language of the Plan, disability is a matter of a participant's inability "to perform all of the normal duties of any occupation or employment for wage or profit for which [she] is reasonably qualified by education, training or experience." What the Seventh Circuit

stated in a Social Security context is equally applicable here: "disability is a function in part of employment opportunities, and employability in turn is a function not only of one's physical condition but of education, age, and other factors." *Glenn v. Secretary of Health and Human Services,* 814 F.2d 387, 389 (7th Cir.1987) (*citing Cummins v. Schweiker,* 670 F.2d 81, 83 (7th Cir.1982)). By its explicit terms, the Plan defines disability, essentially, as unemployability in any job for which Ms. Poulos is qualified. I must therefore consider whether Motorola was unreasonable in determining that Ms. Poulos' undisputed physical condition, combined with other factors bearing on her employability, did not leave her unemployable in any job for which she was qualified.

Although the standards used in adjudicating Social Security cases are not applicable or binding under ERISA (as Motorola argues), the Seventh Circuit has said that the guiding principles developed in those cases may be "instructive" in ERISA cases. *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 695 & n. 11 (7th Cir.1992). The Seventh Circuit used these standards to analyze plan language and reverse as arbitrary and capricious a denial of benefits in *Ladd v. ITT Corp.,* 148 F.3d 753, 754 (7th Cir.1998). The Plan language there defined disability as "[inability] to engage in any and every duty pertaining to any occupation or employment for wage or profit for which you are qualified, or become reasonably qualified by training, education or experience." This is practically identical to the language of the Motorola Plan at issue here ("the continuous inability ... to perform all of the normal duties of any occupation or employment ... for which [she] is reasonably qualified by education, training or experience ..."). Under the

---

1. I do set aside the opinion of Ms. Poulos' rehabilitation specialist, Susan Entenberg, which played no part in Motorola's determinations. It might have been unreasonable to ignore it had Ms. Poulos arranged for its submission prior to Motorola's final determination, but it cannot be unreasonable for Mo-

torola not to consider a piece of evidence that arrives after its final determination on appeal, and in any event I cannot consider evidence not submitted in support of the application for benefits. *See Perlman v. Swiss Bank Comprehensive Disability,* 195 F.3d 975, 981–82 (7th Cir.1999).

Social Security statute, disability is defined in part as an "inability to engage in any substantial gainful activity." 42 U.S.C. § 423(d)(1)(A), but the language is similar enough to warrant an analysis using Social Security standards under *Ladd*.

Motorola objects to such an analysis, arguing that it had information unavailable to the Social Security Administration and that Ms. Poulos had been rejected several times by Social Security before she was approved. It does not, however, explain what information it had or why that information was decisive; and the previous rejection by Social Security does not override the similarity of the Plan language to that of the Social Security statute. Moreover, Motorola's additional information might be a reason for the Social Security Administration to come out differently, but I do not see how it could be a reason to use a different analysis; likewise I do not see how Ms. Poulos' early misfortunes at the agency could logically affect whether the analysis is apposite.

■ Using the analysis in *Ladd*, Motorola's determination was arbitrary and capricious. There the plaintiff was a 38 year old customer service representative who had sustained nerve damage, painful back injuries, and carpal tunnel syndrome. 148 F.3d at 754. She had been found totally disabled by her own physician and by the defendant's physician, who, however, thought she could work four hours a day provided that she did not have to turn her head a lot. *Id.* at 755. Another physician and a Social Security ALJ found she was totally disabled as well. *Id.* The defendant there denied her claim, but the Seventh Circuit found that this action was "arbitrary and even irrational." *Id.* That court noted that: (1) Social Security had found her to be disabled; (2) her condition had

worsened; (3) no one who examined the plaintiff believed that she was able to work; and (4) the defendant based its decision in part on a misunderstood suggestion that the plaintiff be allowed to work on a trial basis.

Ms. Poulos' case presents analogous facts: (1') Social Security has determined that she is disabled. (2') Her condition has worsened from 1985, although it has been stable since 1991; she suffers from degenerative arthritis. (3') Although Motorola's examining physician, Dr. Vucicevic, did not find that Ms. Poulos was disabled, the basis of his claim is what matters, and it is quite similar to the basis of the opinion of the *Ladd* defendant's examining physician. That doctor thought that the plaintiff there could work four hours a day if she did not have to move her neck much. Dr. Vucicevic thinks that Ms. Poulos may be able do "light" or "sedentary" work that does not involve much lifting. (4') Dr. Vucicevic's determination of no disability, as he explained in his deposition, was meant to convey the idea that Ms. Poulos could be given trial employment to see whether there was anything she could do, and therefore was misunderstood by Motorola.[2]

The factual differences between *Ladd* and this case, apart from those already discussed, point, in the main, in Ms. Poulos' favor. These include that Ms. Poulos was 59 years old when Motorola terminated her benefits, had been out of the workforce for 13 years, spoke little English, and had been an unskilled worker without highly marketable job skills. I may use the Social Security regulations as guidance in interpreting Plan language that is equivalent to the language of the Social Security statute. Discussing nonbinding interpretative regulations, the Seventh Circuit has

---

2. Or perhaps not. Motorola itself admits that his conclusions about her "ultimate functionality could only be determined after she saw what she could and could not do by resuming work." Motorola denies that means that Dr. Vucicevic "limit[ed] his conclusions to a 'work trial,'" but that is the most natural

interpretation of Motorola's own construction of the statement, which certainly cannot be read as saying that it took the opinion to be that she could return to work and be gainfully employed, period. But it cannot help Motorola if it did correctly understand Dr. Vucicevic.

said that if I "find[ ] in the interpretations an analogy useful in deciding the case before [me, I] may rely on the interpretations as persuasive evidence [of] ... legislative ... intent." *Shaw v. Prentice Hall Computer Publishing, Inc.,* 151 F.3d 640, 642 (7th Cir.1998) (internal citations omitted). The Social Security "grid" is not an interpretative regulation, but neither are the Social Security standards binding here. I may, however, use the grid as interpretative guidance if I find helpful the analogies in the regulations, which I do. I do not impose an inflexible set of bright line standards, contrary to Motorola's objection, but only look for guidance in view of the common sense standards for employability set forth in those regulations.

The grid allows me to take into consideration Ms. Poulos' age. A person who is 55 or over, severely impaired, and unable to do "medium work," is unable to work unless she has "skills that can be used in less demanding jobs which exist in significant numbers in the national economy." 20 C.F.R. § 404.1563(d). Ms. Poulos cannot do medium work, which would require lifting 50 pounds occasionally or 25 pounds frequently. *Id.* § 404.1567(c). Likewise I can take into account Ms. Poulos' limited education, *id.* § 404.1564(b)(3), poor English language skills, § 404.1564(b)(5), and lack of job skills, § 404.1568(a): she was a manual laborer who had been out of the market for 13 years. In short, I can consider whether she is really employable, which, as noted is the inquiry mandated by the language of the Plan.

Was it "downright unreasonable" for Motorola to conclude that a 59 year old woman in Ms. Poulos' physical shape and with her limited skills and job history was employable at anything for which she was qualified? In *Ladd,* the Seventh Circuit so held in a case that involved facts that were in many ways better for the defendant than this case presents—the plaintiff was much younger, more skilled, better educated, fully competent in English, and less long out of the work force than Ms. Poulos. This offsets the consideration of the higher degree of consensus in *Ladd* that the plaintiff was disabled. Motorola's determination was unreasonable.

Its unreasonableness is highlighted by, though not dependent upon, Dr. Vucicevic's explanation of his conclusions. Motorola says that it determined that Ms. Poulos could do assembly line work similar to what she had formerly done, minus some lifting. But Dr. Vucicevic explains that he concluded that she might be employable as a clerical worker, despite her never having done such work and her poor English skills; and Motorola admits that at most he concluded that her "ultimate functionality could only be determined" after seeing what she could do on a trial basis. The value to Motorola of his conclusion that she was not disabled is therefore substantially diminished, and his was the main opinion of an examining physician that she was not disabled.[3]

Second, Ms. Poulos' physical capability is only part of the inquiry. Even if Dr. Vucicevic's opinion letter is taken at face value leaving out his further explanations about his actual conclusions, and giving due weight to the nonexamining physicians, the outcome is the same. The medical opinions go only to Ms. Poulos' physical condition, the only thing that the physicians are in fact qualified to analyze, since

3. Dr. Vucicevic's later explanation of his conclusions are not excluded by the restriction in *Perlman,* 195 F.3d at 982, confining judicial review to evidence in the administrative record in support of the application for benefits. Motorola waives this argument because it does not raise it, and because it invokes Dr. Vucicevic's subsequent comments in support of its earlier determination, and does so absolutely, not for the sake of argument. In any event, here the expert whose opinion Motorola solicited explains that his opinion does not mean what Motorola concluded that it meant. In view of that explanation, provided by Motorola's own choice of physician, it would not be reasonable to allow Motorola to rely on a misunderstanding, however plausible, about the nature and meaning of Dr. Vucicevic's conclusions.

they are not vocational experts. However, as explained, the Plan language focuses on employability, of which physical capability is only a part. There are at least four considerations that matter: (1) physical ability; (2) age, (3) skills, and (4) job history; and other factors also play a role. In relying exclusively on Dr. Vucicevic's opinion and, to the extent that it did so, on those of the other physicians, Motorola took into account only (1), physical ability, and did not make the holistic inquiry demanded by its own Plan language, which would have required taking into consideration her age, skills, job history, and other relevant factors. The determination, therefore, was not reasonable.

I emphasize that this is true whether or not I interpret the Plan language in light of the Social Security standards. The Plan language itself rules out the reasonableness of a determination of employability that looks only at one of the several main factors commonsensically required for such a determination even under deferential review. Motorola, therefore, did not adequately explain why Ms. Poulos is employable in any job for which she is qualified, and so its determination was arbitrary and capricious.

Accordingly I DENY Motorola's motion for summary judgment and GRANT Ms. Poulos' motion for summary judgment. Her benefits are to be reinstated.